SHERIFF OF MIDDLESEX COUNTY & others[1] *vs.* COMMISSIONER OF CORRECTION & others.[2]

Suffolk. April 10, 1981. — May 15, 1981.

Present: HENNESSEY, C.J., BRAUCHER, WILKINS, LIACOS, & ABRAMS, JJ.

*Imprisonment. Practice, Criminal,* Sentence. *Judge. Commissioner of Correction. County,* Correctional facilities. *Sheriff.*

A Superior Court judge who sentences a criminal defendant to a term of more than two and one-half years in a State correctional facility has no authority to order him held in the custody of a county sheriff in a county jail or house of correction without the consent of the sheriff in the absence of an emergency which could be alleviated by such an order or a constitutional deprivation which could be remedied by such an order. [635-636]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on January 5, 1981.

The case was reported by *Wilkins,* J.

*Michael C. Gilman (Kevin F. Moloney* with him) for the plaintiffs.

*Linda M. Irvin,* Assistant Attorney General (*E. Michael Sloman,* Assistant Attorney General, with her) for Commissioner of Correction.

*Judith M. Cabaniss, Judith A. Stalus & Ann Lambert Greenblatt* for Charles M. Roberts & others, amici curiae, submitted a brief.

---

[1] The County Commissioners of Middlesex.

[2] The other defendants are the Treasurer of the Commonwealth, the Chief Administrative Justice of the Trial Court, and the Chief Justices of the Superior Court Department, the District Court Department, and the Boston Municipal Court Department. The judicial defendants have taken no position on the reported question. The Attorney General has filed a brief in this court only on behalf of the Commissioner of Correction.

WILKINS, J.   A single justice of this court has reported to us a question concerning the authority of a judge of the Superior Court to order that a criminal defendant, sentenced to a term of more than two and one-half years in a State correctional facility, be held in the custody of a county sheriff in a county jail or house of correction when no space is available at any State institution.[3]   The parties have stipulated to facts bearing on the reported question.[4]   We conclude that, in the circumstances presented, a judge of the Superior Court does not have the authority to order that a criminal defendant be held in a county facility after the defendant has been sentenced to a State correctional facility. In the circumstances of this case, we answer the reported question in the negative.

The plaintiffs are the sheriff and the county commissioners of Middlesex.   The sheriff has responsibility for the operation of the Middlesex County jail and house of correction at Billerica (Billerica), and he has the custody and control of Billerica and all prisoners committed to it.   See G. L. c. 126, § 16.   The county commissioners have certain statutory duties concerning Billerica.   See G. L. c. 126, §§ 8, 11; G. L. c. 34, § 14.   The Commissioner of Correction (commissioner) is responsible, in part, for the administration and operation of correctional facilities of the Department of Correction (department) and has statutory obligations with respect to county jails and correctional facilities.   See G. L. c. 124, §§ 1, 6, and c. 127, §§ 1A, 1B.

---

[3] The reported question is:

"Does a Justice of the Superior Court, having sentenced a criminal defendant to confinement at Massachusetts Correctional Institution, Concord, or Massachusetts Correctional Institution, Walpole, for a term of more than two and one-half years, have the authority, in the absence of the approval of the sheriff, to order that defendant be held in the custody of the sheriff at the Middlesex County Jail and House of Correction at Billerica when no space is available at any state correctional facility?"

[4] A single justice of this court has special authority under Mass. R. Civ. P. 64, 365 Mass. 831 (1974), to "reserve any question of law for consideration by the full court" and to "report so much of the case as is necessary for understanding the question reserved."

In the past several years (and at least until recently), certain prisoners who were sentenced to a term of imprisonment in a State correctional institution were incarcerated at Billerica until the department notified the sheriff of the availability of space at a State facility. This practice has commonly been referred to as the "moratorium." Under the moratorium, when a judge of the Superior Court sentenced a defendant to a State correctional facility, on occasion the mittimus was amended by an "Order of the Court" which provided that the prisoner was to be held in the custody of a county sheriff until space should become available in a State correctional facility. From time to time thereafter, on an average of about six weeks after sentencing, a moratorium inmate has been transferred to a State correctional facility where, for the first time, the inmate was delivered to the reception center for the purpose of classification. The moratorium was designed as a cooperative effort between the commissioner and the Superior Court to alleviate severely overcrowded conditions in State facilities.[5] Billerica can accommodate 401 inmates, pursuant to a determination of the commissioner. On March 20, 1981, Billerica, whose inmate population has been increasing recently, had 505 inmates.

It is agreed, indeed it seems axiomatic, that inmate population levels in excess of the capacity of correctional institutions increase the risks of danger to the public, to the inmates, and to the correctional staff. The department has found Billerica not to be in compliance with certain of the department's requirements concerning space. The State Department of Public Health has claimed that Billerica fails to comply with its requirements concerning the minimum square footage necessary for each inmate.

[5] As of January 27, 1981, the Massachusetts Correctional Institution at Walpole had a rated capacity for 518 inmates and occupancy of 681 inmates. The Massachusetts Correctional Institution at Concord had a rated capacity of 245 inmates and occupancy of 439 inmates. On the same date, Statewide, county correctional facilities were 11% (278 inmates) over capacity.

The plaintiffs argue that a Superior Court judge lacks the authority to order that a prisoner, sentenced to a State correctional facility, be delivered to the sheriff to be held at Billerica. They contend that the Legislature has established a scheme for the sentencing of persons convicted of crimes and for the execution of those sentences under the executive branch of government. They point to G. L. c. 279, § 34, as directing that a person sentenced to a State correctional institution be delivered for proper classification to the reception center established pursuant to G. L. c. 127, § 20. Any direct placement of a prisoner in Billerica, they argue, is contrary to this statutory mandate.

The plaintiffs further point to the provisions of G. L. c. 127, § 97, which states that the commissioner may transfer a prisoner from a State correctional institution to a county jail or house of correction only "with the approval of the sheriff of the county." They argue that the authority to transfer lies in the commissioner and not in the courts and, in any event, a transfer may be made only if the sheriff consents.

Although the plaintiffs make no particular note of it in their brief, G. L. c. 279, § 23, provides that "[n]o sentence of a male convict to imprisonment or confinement for more than two and one-half years shall be executed in any jail or house of correction." The maximum sentence to a jail or house of correction and the minimum sentence to a State prison is two and one-half years. G. L. c. 279, §§ 23, 24. The implication of § 23 is that sentences of more than two and one-half years are to be to State facilities, and that, pursuant to G. L. c. 127, § 97, any transfer of a State prisoner to a county facility would be possible in the normal course only with the approval of the sheriff.

The commissioner argues that the authority of a judge in the Superior Court to commit a State prisoner to a county correctional facility is not limited by any statutory provision. He argues that the two-and-one-half year limitation of G. L. c. 279, § 23, is only a ceiling on the length of a sentence to a jail or a house of correction and does not limit the judge's inherent authority to commit a defendant with a

State prison sentence directly to a county facility. It seems clear, however, that the commissioner cannot circumvent the limitation on his power to place a State prisoner in a county facility by enlisting the aid of the Superior Court. The moratorium might be regarded as such an attempt. However, if the commissioner cannot place a State prisoner in a county house of correction without the sheriff's consent, there remains the question of the authority of a Superior Court judge, quite apart from any cooperation with the commissioner, to sentence a State prisoner to serve at least the initial portion of his State prison sentence in a county facility.

We see in the statutory pattern an intent that defendants sentenced to State correctional facilities not serve any portion of their sentences in county facilities, without the consent of the appropriate sheriff. If there were an emergency or if the cure for some constitutional violation required that some statutory restriction be disregarded (see *Spence* v. *Reeder*, 382 Mass. 398, 414-415 [1981]), the inherent power of the courts could justify an order committing a State prisoner, perhaps only temporarily, directly to a county facility. Here, we have no emergency, at least not one that can be alleviated by assigning State prisoners directly to Billerica. Both the State correctional facilities and Billerica are overcrowded. The question reported to us does not involve a claim that some constitutional deprivation can be remedied reasonably only by committing State prisoners directly to Billerica, and the stipulated facts do not demonstrate a denial of constitutional rights, even if one were to assume the defendants could raise such points on behalf of inmates of State facilities. See *Penal Insts. Comm'r for Suffolk County* v. *Commissioner of Correction*, 382 Mass. 527, 532-533 (1981).

The circumstances do not justify the exercise of any inherent judicial authority. The performance of essential court functions is not impaired, nor is there any threat to the maintenance of the court's authority, in adhering to the statutory direction that judges sentencing State prisoners

order them to be committed to State correctional facilities. After such an order is entered, the place of actual confinement is a matter for the executive branch, subject to the conditions imposed by the Legislature. This conclusion follows from our analysis of the inherent, constitutional power of the courts in *Commonwealth* v. *Jackson,* 369 Mass. 904, 921-922 (1976), where our opinions on this subject are collected and discussed.[6] The fundamental point is that the inherent powers of the courts are those whose exercise is essential to the function of the judicial department, to the maintenance of its authority, or to its capacity to decide cases. *Opinion of the Justices,* 279 Mass. 607, 613 (1932). *Blankenburg* v. *Commonwealth,* 260 Mass. 369, 373 (1927). Statutory directions concerning the place where a particular criminal defendant is to serve his sentence involve no legislative encroachment on the court's constitutional authority.[7]

In the circumstances presented by the stipulated facts, we answer the reported question in the negative.

*So ordered.*

---

[6] For subsequent opinions discussing the inherent power of courts, see *New Bedford Standard-Times Publishing Co.* v. *Clerk of the Third Dist. Court of Bristol,* 377 Mass. 404, 410-412 (1979) (statute limiting public access to alphabetical card index of criminal defendants does not involve the internal functioning of the judicial branch); *Police Comm'r of Boston* v. *Municipal Court of the Dorchester Dist.,* 374 Mass. 640, 664 (1978) (Juvenile Court judge has jurisdiction to order that certain police records concerning a juvenile be expunged in particular circumstances).

[7] It has long been the practice to recognize that a sentence that departs from the sentence prescribed by the Legislature should be corrected on challenge by the prisoner. See *Commonwealth* v. *Longval,* 378 Mass. 246, 252 (1979); *Commonwealth* v. *Hayes,* 372 Mass. 505, 507-508 (1977); *Commonwealth* v. *Conroy,* 333 Mass. 751, 756 (1956); *Sennott's Case,* 146 Mass. 489, 493 (1888); *Feeley's Case,* 12 Cush. 598, 599 (1853).