KEVIN ROYCE GRAY vs. COMMISSIONER OF REVENUE & another.[1]

Hampden. January 11, 1996. - May 16, 1996.

Present: LIACOS, C.J., ABRAMS, LYNCH, O'CONNOR, & FRIED, JJ.

*Probate Court,* Report, Child born out of wedlock. *Parent and Child,* Support of child born out of wedlock. *Statute,* Retroactive statute. *Constitutional Law,* Separation of powers. *Due Process of Law,* Paternity.

A report of a case that was not of the entire case or of an interlocutory order was discharged as not properly before this court. [667-668]

In view of the public interest involved and where the parties had briefed the issues, this court undertook to address the questions posed by a report that was discharged. [668]

The provisions of G. L. c. 119A, § 6 (*b*), as amended by St. 1993, c. 460, are applicable to any seizure of assets occurring after the effective date, April 13, 1994. [669-670]

Discussion of the separation of powers set forth in art. 30 of the Massachusetts Declaration of Rights. [670-672]

An amendment to G. L. c. 209C, § 19, effected by St. 1995, c. 460, was not an impermissible legislative restriction of the court's inherent powers in violation of art. 30 of the Massachusetts Declaration of Rights, where the Probate Court's power to levy on an obligor's property, restricted by the amendment, was not essential to that court's functioning, authority or capacity to decide cases. [672-674]

The action of the Department of Revenue in seizing the property of a child support obligor in satisfaction of child support arrearages, in accordance with the provisions of G. L. c. 119A, § 6, was not in conflict with an order of a Probate Court directing payment by the obligor of a certain weekly amount toward those arrearages and was not an impermissible infringement on the powers of the judiciary by the executive department in violation of art. 30 of the Massachusetts Declaration of Rights. [674-675] LYNCH, J., dissenting.

The seizure of property of a child support obligor by the Department of Revenue in satisfaction of child support arrearages, pursuant to procedures mandated by G. L. c. 119A, satisfied the due process requirements of art. 10 of the Massachusetts Declaration of Rights and the Fourteenth Amendment to the United States Constitution. [675-676]

CIVIL ACTION commenced in the Hampden Division of the Probate and Family Court Department on September 20, 1993.

[1]Georgette Vogel.

A complaint for contempt, filed on June 6, 1994, was heard by *David G. Sacks*, J., and the case was reported to the Appeals Court. The Supreme Judicial Court transferred the case on its own initiative.

*Thomas A. Kenefick, III* (*Barbara J. Sweeney* with him) for the taxpayer.

*Thomas H. Green, III*, Assistant Attorney General, for the Commissioner of Revenue.

ABRAMS, J. At issue is whether the Department of Revenue (department) may seize property of a child support obligor in satisfaction of child support arrearages, where the obligor is repaying the arrearages at a rate ordered by a Probate Court judge. The plaintiff, Kevin Royce Gray, asserts that the department's seizure of his bank and credit union accounts constitutes contempt of court and violates his rights to due process. Gray also argues that the seizure and the statute pursuant to which the seizure took place violate art. 30 of the Massachusetts Declaration of Rights, the separation of powers provision of the Massachusetts Constitution. Gray asked the court to hold the department in contempt, order return of his assets, and grant declaratory relief. The case was reported to the Appeals Court and then transferred here on our motion. We rule that the report is not properly before us, and therefore discharge it.

*Procedure.* The judge's order is entitled "Report to Appeals Court Pursuant to M. R. A. P. 5." Rule 5 of the Massachusetts Rules of Appellate Procedure, 378 Mass. 930 (1979), does not, however, permit a judge to report a case. It merely provides that a report, properly made, is procedurally equivalent to a notice of appeal. The authority of a Probate Court judge to report a case derives from G. L. c. 215, § 13 (1994 ed.), and Mass. R. Dom. Rel. P. 64 (1996). See *Adoption of Thomas*, 408 Mass. 446, 448-449 (1990).[2] Under those provisions, a Probate Court judge may report "either the entire case . . . or questions raised by interlocutory rulings that 'so affect[ ] the merits of the controversy that the matter

---

[2]See also *Dorfman* v. *Allen*, 386 Mass. 136, 138 (1982) (discussing authority under G. L. c. 215, § 13 [1994 ed.]); *Matter of Jones*, 379 Mass. 826, 828 n.2 (1980) (same).

ought to be determined by the appeals court.' " *Department of Revenue* v. *B.P.*, 412 Mass. 1015, 1015-1016 (1992), quoting Mass. R. Civ. P. 64, 365 Mass. 831 (1974). Absent an interlocutory ruling, the report must be of the entire case because neither G. L. c. 215, § 13, nor Mass. R. Dom. Rel. P. 64 authorizes a report of part of a case or a specific question of law. See *Dorfman* v. *Allen*, 386 Mass. 136, 138 (1982), quoting *Curran, petitioner*, 314 Mass. 91, 94 (1943); *Ellis* v. *Ellis*, 413 Mass. 1003, 1004 (1992). Here there was no interlocutory order, and the judge purported to report only one count of a two-count complaint. Therefore, the report must be discharged. See *Department of Revenue* v. *B.P.*, *supra* at 1017; *Adoption of Thomas*, *supra* at 448-449; *Dorfman, supra.*

The parties have briefed the issues, however, and "[w]e believe the public interest would be best served by our answering the questions posed." *Adoption of Thomas, supra* at 449. Accord *Wellesley College* v. *Attorney Gen.*, 313 Mass. 722, 731 (1943) ("in view of the public interest involved and the uncertainty and confusion now existing . . . we ought . . . to express . . . our opinion"). We proceed to do so.

*Facts.* The facts set forth in the parties' statement of agreed facts are as follows. Georgette Vogel gave birth to her child, Jerry, on November 10, 1979. She applied to the department for child support enforcement services on June 4, 1993. On September 30, 1993, the department filed a complaint seeking to establish Gray's paternity. On December 23, 1993, a Probate Court judge in Hampden County concluded that Gray was Jerry's father and that he owed $17,160 in past due child support. Pursuant to G. L. c. 209C, § 9 (1992 ed.), the judge ordered Gray to pay $110 a week in current child support and an additional $25 a week to be applied toward the arrearage, all by wage assignment.

In a letter dated March 5, 1994, the department notified Gray that it would levy on his property if the arrearage was not paid in full within thirty days. Gray requested an administrative review. He did not dispute the amount owed, but stated that he was repaying it in the manner ordered by the Probate Court judge.

The department did not believe Gray's compliance with the court order limited its authority under G. L. c. 119A to demand and enforce immediate payment in full. Accordingly, on or about April 22, 1994, the department seized $100 from

Gray's account at BayBank and $5,187 from Gray's Individual Retirement Account (IRA) at the Pioneer Valley Postal Federal Credit Union.

*Amendment to G. L. c. 119A.* General Laws c. 119A provides for the enforcement of child support obligations. Chapter 119A was amended in 1994, and the parties dispute which version of c. 119A is applicable.[3]

On February 5 and March 5, 1994, the department sent to Gray notices of assessment and levy. Amendments to c. 119A, contained in St. 1993, c. 460, became effective on April 13, 1994.[4] The seizure of Gray's accounts occurred on April 22, 1994. Gray contends that because the notices were sent prior to the amendments' effective date, the unamended version of c. 119A applies. The department contends that because the

[3]In particular, the parties dispute the applicable version of G. L. c. 119A, § 6 (*b*). That provision, in its present form, as appearing in St. 1993, c. 460, § 31, provides in pertinent part:

"(*b*) (1) A child support obligation which is unpaid in whole or in part shall, as of the date on which it was due, be a lien in favor of the obligee in an amount sufficient to satisfy unpaid child support . . . . An amount of restitution established by a court or an administrative agency of competent jurisdiction shall be due and payable as of the date such amount is established . . . .

"(6) If any obligor against whom a lien has arisen . . . neglects or refuses to pay the sum due . . . the [department] may collect such unpaid child support and levy upon all property as provided herein. For the purposes of this section, the word 'levy' shall include the power of distraint and seizure by any means . . . ."

Former § 6 (*b*), as appearing in St. 1987, c. 490, § 15, provided, in pertinent part:

"(1) An order or judgment for child support which is unpaid in whole or in part shall be eligible to be assessed as delinquent as of the date on which it was originally due whether weekly, monthly or on any other periodic basis. If the [DOR] determines that child support is unpaid, it may at any time after such child support payment was due assess the same . . . .

"(2) If any child support obligor neglects or refuses to pay the sum assessed after demand . . . the amount . . . shall be a lien in favor of the commonwealth . . . .

"(3) If any child support obligor, assessed pursuant to subparagraphs (1) and (2), neglects or refuses to pay the sum assessed within ten days . . . the [DOR] may collect such unpaid child support . . . by levy upon all property or rights to property . . . ."

[4]Statute 1993, c. 460, §§ 21-54, amended G. L. c. 119A; St. 1993, c. 460, §§ 68-84, amended G. L. c. 209C.

amendments were in effect when the seizure took place, the amended version applies. We agree with the department.

A civil statute which extinguishes substantive rights "will not be applied retroactively to pending claims 'unless the Legislature has stated the contrary explicitly.' " *Shelby Mut. Ins. Co.* v. *Commonwealth*, 420 Mass. 251, 257 (1995), quoting *Austin* v. *Boston Univ. Hosp.*, 372 Mass. 654, 657 (1977). "Where, however, [a civil] statute regulates practice, procedure or evidence, as distinguished from substantive rights, it will commonly be applied to actions already pending." *Goodwin Bros. Leasing* v. *Nousis*, 373 Mass. 169, 173 (1977) (statute which required filing of certificate as condition precedent to civil action is procedural and may be applied retroactively). See generally 1A Singer, Sutherland Statutory Construction § 22.36 (5th ed. 1993). This rule applies to statutory amendments. See *Boston* v. *Keene Corp.*, 406 Mass. 301, 312-313 (1989) (regarding asbestos liability tort, limitation period is procedural rather than substantive and may be retroactively expanded); *LaGrant* v. *Boston Hous. Auth.*, 403 Mass. 328, 329, 331 (1988) (repeal of presentment requirement of Massachusetts Tort Claims Act applied retroactively to validate claim); *Wetherell* v. *Boston Mut. Life Ins. Co.*, 18 Mass. App. Ct. 614, 617-618 (1984) (statutory amendment granting subject matter jurisdiction in civil actions against Commonwealth held applicable to action filed nine days before amendment's effective date).

Gray received notice prior to the effective date of the amendments to c. 119A, but the actual seizure of his assets occurred after the effective date. Because notice is procedural, see, e.g., *Good* v. *Commissioner of Correction*, 417 Mass. 329, 332 n.2 (1994); *Massachusetts Auto Body Ass'n* v. *Commissioner of Ins.*, 409 Mass. 770, 781 (1991), the notice provisions of amended c. 119A may be applied· retroactively. Therefore, the amended statute governs this action.

*Separation of powers.* Article 30 provides: "In the government of this Commonwealth, the legislative department shall never exercise the executive and judicial powers, or either of them: the executive shall never exercise the legislative and judicial powers, or either of them: the judicial shall never exercise the legislative and executive powers, or either of them: to the end it may be a government of laws and not of

men."[5] While we have "insisted on scrupulous observance of [art. 30's] limitations," *New Bedford Standard-Times Publishing Co.* v. *Clerk of the Third Dist. Court of Bristol,* 377 Mass. 404, 410 (1979), we have also recognized that some overlap is inevitable,[6] and "absolute division of the three general types of functions is neither possible nor always desirable." *Commonwealth* v. *Tate,* 34 Mass. App. Ct. 446, 448 (1993), quoting *Opinion of the Justices,* 365 Mass. 639, 641 (1974).[7] Our focus, therefore, is on "the essence of what cannot be tolerated under art. 30 . . . interference by one department with the functions of another." *Chief Admin. Justice of the Trial Court* v. *Labor Relations Comm'n,* 404 Mass. 53, 56 (1989), quoting *Opinion of the Justices, supra.* Accord *Babets* v. *Secretary of Human Servs.,* 403 Mass. 230, 233 (1988); *New Bedford Standard-Times Publishing Co., supra.* The executive and legislative departments impermissibly interfere with judicial functions when they purport to restrict or abolish a court's inherent powers, *Brach* v. *Chief Justice of the Dist. Court Dep't,* 386 Mass. 528, 535 (1982); *Commonwealth* v. *Jackson,* 369 Mass. 904, 921-922 (1976), or when they purport to reverse, modify, or contravene a court order. See *Department of Revenue* v. *Jarvenpaa,* 404 Mass. 177, 183 (1989); *Hoffer* v. *Commissioner of Correction,* 397 Mass. 152, 156 (1986); *Russell Box Co.* v. *Commissioner of Corps. & Taxation,* 325 Mass.

---

[5]Article 30 is more explicit than the Federal Constitution in calling for the separation of powers, but the underlying rationale is the same: to "diffus[e] power the better to secure liberty." *Youngstown Sheet & Tube Co.* v. *Sawyer,* 343 U.S. 579, 635 (1952) (Jackson, J., concurring). See *Bowsher* v. *Synar,* 478 U.S. 714, 721-722 (1986).

[6]"[T]he character of some acts is such that their performance may be entrusted to the legislative or the judicial branch of the government." *Collins* v. *Selectmen of Brookline,* 325 Mass. 562, 565 (1950). See also *Brach* v. *Chief Justice of the Dist. Court Dep't,* 386 Mass. 528, 535-538 (1982) (courthouse facilities may be maintained by either judicial or executive branch).

[7]See *Edgartown* v. *State Ethics Comm'n,* 391 Mass. 83, 90 (1984) (conduct of attorney who is municipal employee may be regulated by both statute and rules of court); *Brach* v. *Chief Justice of the Dist. Court Dep't, supra* at 539 (revocation of operator's license may be legislatively assigned to the executive department, the judiciary, or both); *Opinion of the Justices,* 372 Mass. 883, 892 (1977), quoting *Opinion of the Justices,* 365 Mass. 639, 641 (1974) ("separation of powers does not require three 'watertight compartments' within the government"); *Commonwealth* v. *Jackson,* 369 Mass. 904, 920-921 (1976) (imposition of sentence judicial function, but Legislature may set minimum mandatory sentence).

536, 539 (1950). Gray alleges both types of interference. We address each in turn.

*Legislative restriction of court's inherent powers.* General Laws c. 209C provides for the rights and protections of children born out of wedlock. G. L. c. 209C, § 1 (1994 ed.). Amendments to chapter 209C became effective on April 13, 1994. St. 1995, c. 460. Former c. 209C, § 9 (*a*), as amended through St. 1989, c. 341, § 94, provided, in pertinent part: "the [judge] may order one party to pay the other party . . . a sum for past [child] support." Section 19 of c. 209C empowered the judge to order a levy on an obligor's property in satisfaction of such debts.

Under c. 209C, as amended, however, a Probate Court judge does not have the power to order levy in satisfaction of past child support[8] (the judge may, on the department's complaint pursuant to G. L. c. 119A, § 6 [*b*] [9], enforce the lien created by G. L. c. 119A, § 6 [*b*] [1]). Gray argues that the power to levy on an obligor's property to recover unpaid child support is among the inherent powers of the Probate Court which may not be legislatively abridged. We do not agree.

"Inherent powers of the courts are those 'whose exercise is essential to the function of the judicial department, to the maintenance of its authority, or to its capacity to decide cases.'. . . Although the courts' inherent powers may be recognized by statute, they exist without statutory authorization and cannot be restricted or abolished by the Legislature without violating art. 30 . . . ." *Brach, supra* at 535, quoting *Sheriff of Middlesex County* v. *Commissioner of Correction,* 383 Mass. 631, 636 (1981). Accord *Commonwealth* v. *O'Neil,* 418 Mass. 760, 763-764 (1994); *Jackson, supra* at 921-922.

"Among those powers that have been held to be inherent is the power to grant a change of venue in order to secure an impartial trial . . . to use contempt proceedings to ensure the orderly administration of justice . . . to order the county to pay for adequate resources to ensure the proper operation of

---

[8]The Probate Court is authorized to order current support for the children of unwed parents by G. L. c. 209C, § 9 (*a*). Under G. L. c. 119A, § 6 (*a*), (*b*) (1), the court sets the total amount of arrears as of the date of judgment. Thereafter, the department may add as arrears any support payments which were ordered by the court but which the obligor did not timely pay. G. L. c. 119A, § 6 (*b*) (2).

the courts . . . to make rules governing the internal organization of the courts and to control the practice of law," *Jackson, supra* at 921, to appoint a guardian ad litem, *Adoption of Thomas,* 408 Mass. 446, 452 (1990), to impound files, *George W. Prescott Publishing Co.* v. *Register of Probate for Norfolk County,* 395 Mass. 274, 277 (1985), and to revoke a judgment obtained by fraud on the court. *Jose* v. *Lyman,* 316 Mass. 271, 280 (1944). *Winthrop Corp.* v. *Lowenthal,* 29 Mass. App. 180, 184 (1990). See *Rockdale Management Co.* v. *Shawmut Bank, N.A.,* 418 Mass. 596, 598 (1994). Such powers are inseparable from a judge's power to hear and decide cases. See *Michaelson* v. *United States ex rel. Chicago, St. Paul, Minn. & Omaha Ry.,* 266 U.S. 42, 65-66 (1924). The Legislature may modify, enlarge, diminish, or abolish the jurisdiction of all courts subordinate to the Supreme Judicial Court but, having established statutory courts "the Legislature has no authority to abrogate such [inherent] power[s] or to render [them] inoperative." *Opinion of the Justices,* 314 Mass. 767, 782 (1943). See also *Parents of Two Minors* v. *Bristol Div. of the Juvenile Court Dep't,* 397 Mass. 846, 851 (1986); *New Bedford Standard-Times Publishing Co., supra* at 417 (Abrams, J., concurring).

The circumstances here do not support the contention that the power to order levy under c. 209C is essential to the Probate Court's functioning, authority, or capacity to decide cases.[9] The functioning and capacity of the Probate Court is not affected in any way by deprivation of that power, and the court's authority is enforced by the department's obligation[10] and power to collect the arrearages established by the Probate Court. If the department is remiss, it is subject to the court's

[9]Cf. *School Comm. of Worcester* v. *Worcester Div. of the Juvenile Court Dep't,* 410 Mass. 831, 837-838 (1991) (Juvenile Court judge does not have inherent power to issue order to school committee); *Parents of Two Minors* v. *Bristol Div. of the Juvenile Court Dep't,* 397 Mass. 846, 853 (1986) (Juvenile Court judge does not have inherent power to order parents to open their home to Department of Social Services); *Sheriff of Middlesex County* v. *Commissioner of Correction,* 383 Mass. 631, 636 (1981) (statutory directions concerning place where criminal is to serve sentence do not constitute legislative encroachment on judicial authority).

[10]General Laws c. 119A, § 2 (1994 ed.), provides, in part, that the department "shall provide . . . services to children and families, whether or not they are recipients of public assistance, *to establish and enforce* child support obligations. Said services shall include . . . the collection and disbursement of child support payments . . . ."

order to fulfil its statutory duty. See *Care & Protection of Isaac,* 419 Mass. 602, 606 (1995) (court has power to order agency to do what it has legal obligation to do); *Charrier* v. *Charrier,* 416 Mass. 105, 110 (1993). Moreover, judicial review of the department's actions is available under G. L. c. 119A, § 6 (*b*) (11). We conclude that the Legislature did not violate art. 30 by restricting the Probate Court's power to levy under G. L. c. 209C.

*Executive modification of court orders.* At the conclusion of the paternity action the Probate Court judge ordered Gray to pay $25 a week toward child support arrearages. The department, subsequently, seized funds from Gray's bank and IRA accounts in satisfaction of the same arrearages. Gray contends that the department's action was an unconstitutional executive modification of a judicial order. We do not agree.

General Laws c. 209C, § 18, and c. 119A, § 12 (*a*) (1994 ed.), concurrently provide, in pertinent part: "Each judgment or order of support which is issued . . . pursuant to [c. 209C] shall conform to and shall be enforced in accordance with the provisions of [c. 119A, § 12]." General Laws c. 119A, § 12 (*j*), in turn, provides: "[O]bligations may also be enforced in accordance with the provisions of [c. 119A, § 6]." These provisions were not altered by the 1994 amendments. They were in effect in December, 1993, when the judge's order was entered.

The department's interpretation of § 6 was at that time well established. Ten months earlier, in February, 1993, the department had published its interpretation of § 6. Child Support Enforcement, CSE Directive C-93-1. According to example 1 of that publication, § 6 (*b*) authorized the department to levy against an obligor's bank accounts despite the obligor's compliance with a court order requiring payment of arrearages at $25 a week. "[E]xisting pertinent statutes are read into and made a part of" any court order. *Sheehan, petitioner,* 254 Mass. 342, 345 (1926).[11] In the absence of anything in the order indicating that the judge did not intend

---

[11]Accord *Ierardi, petitioner,* 366 Mass. 640, 650 (1975) ("statutes in effect at the time of sentencing which give the executive branch certain authority over the terms of the confinement must be read into the court's sentence"); *Russell Box Co.* v. *Commissioner of Corps. & Taxation,* 325 Mass. 536, 540 (1950) (judicial order dissolving corporation was entered subject to statute which gave commissioner the power to revive it).

it to be subject to § 6 (*b*) and the department's interpretation thereof,[12] the statute and the department's interpretation are presumed incorporated "as much as if th[ose] provisions . . . had been written into the decree."[13] *Russell Box Co., supra* at 540. It follows that the department's seizure of Gray's assets "was not in conflict with the decree but was entirely consistent with it." *Id.* See *Ierardi, petitioner,* 366 Mass. 640, 650 (1975) (actions taken by executive department pursuant to statute are "read into the court's sentence . . . and do not infringe on the powers of the judiciary").

*Due process.* Gray's argument that he was denied due process under art. 10 of the Massachusetts Declaration of Rights and the Fourteenth Amendment to the United States Constitution requires only brief discussion.[14] In considering whether a challenged action satisfies due process requirements, courts must balance the private interest affected, the risk of erroneous deprivation, the probable value of additional or substitute safeguards, and the governmental interests involved. *Mathews* v. *Eldridge,* 424 U.S. 319, 335 (1976). The department's seizure of Gray's accounts was preceded by a trial in which a judge determined the amount of arrearages pursuant to G. L. c. 119A, § 6 (*b*) (1), by notices of assessment and levy pursuant to § 6 (*b*) (2) and (10), and by administrative review pursuant to § 6 (*b*) (2). Moreover, in bringing this action Gray is taking advantage of the postdeprivation procedure provided for in § 6 (*b*) (11). On the other side of the balance, "[i]t is hard to imagine a more compelling state interest than the support of its children." *Duranceau* v. *Wallace,* 743 F.2d 709, 711 (9th Cir. 1984). We conclude that the department's seizure of Gray's assets did not violate due process guarantees.

---

[12]"We remain mindful . . . that the duty ultimately to interpret the statute rests with the court." *Massachusetts Community College Council MTA/ NEA* v. *Labor Relations Comm'n,* 402 Mass. 352, 353 (1988). Accord *Massachusetts Org. of State Eng'rs & Scientists* v. *Labor Relations Comm'n,* 389 Mass. 920, 924 (1983), quoting *Cleary* v. *Cardullo's, Inc.,* 347 Mass. 337, 344 (1964).

[13]The judge could have negated the implicit incorporation of § 6 (*b*) by ordering the department to refrain from collection activities. If the department had nonetheless persisted, it would then have been subject to contempt charges.

[14]Gray does not contend that in these circumstances the State Constitution provides any greater protection than the Fourteenth Amendment to the Constitution of the United States.

Cf. *Leger* v. *Commissioner of Revenue*, 421 Mass. 168, 172 (1995), cert. denied sub nom. *Leger* v. *Adams*, 116 S. Ct. 1264 (1996) (in tax collection, postdeprivation procedures alone satisfy the demands of due process).

*Report discharged.*

LYNCH, J. (dissenting). Because I believe that the seizure at issue unconstitutionally modifies a valid court order, I respectfully dissent.

The court correctly states *ante* at 671, that neither the executive nor legislative branch may reverse, modify, or contravene a court order. See, e.g., *Department of Revenue* v. *Jarvenpaa*, 404 Mass. 177, 183 (1989). I also agree that, at least to some extent, a judicial decree incorporates existing pertinent statutes.[1] See *ante* at 675; *Ierardi, petitioner*, 366 Mass. 640, 650 (1975); *Russell Box Co.* v. *Commissioner of Corps. & Taxation*, 325 Mass. 536, 540 (1950); *Sheehan, petitioner*, 254 Mass. 342, 345 (1926). Therefore, it follows that the judge's decree ordering the obligor to pay $25 a week toward his arrearages incorporated the terms of G. L. c. 119A, § 6 (*b*), at least as that statute existed at the time of the decree.[2]

I do not agree, however, that the judge's decree also incorporates the Department of Revenue's (department's) interpretation of the statute contained in Child Support Enforcement, CSE Directive C-93-1. We have not previously shown such deference to administrative determinations and the court offers no justification in law or public policy for doing so here. Administrative interpretations and regulations are not statutes. There are excellent reasons to limit the incorporation doctrine to statutes. See generally *Arthur D. Little, Inc.* v. *Commissioner of Health & Hosps. of Cambridge*, 395 Mass. 535, 557-563 (1985) (Lynch, J., dissenting). "[A]n

---

[1]I agree with the court's conclusion, *ante* at 672-674, that the Department of Revenue's seizure of the obligor's assets did not restrict or abolish a court's inherent powers. See *Brach* v. *Chief Justice of the Dist. Court Dep't*, 386 Mass. 528, 535 (1982). Therefore, I need not decide whether, in some circumstances, an existing pertinent statute would not be incorporated into a court order because it unconstitutionally impinges on judicial functions.

[2]The judge's order preceded the effective date of the statute's amendment. *Ante* at 669 & n.3.

agency is not a legislature." *Id.* at 559, quoting *State Farm Mut. Auto. Ins. Co.* v. *Department of Transp.*, 680 F.2d 206, 221 (D.C. Cir. 1982), vacated on other grounds, *Motor Vehicle Mfrs. Ass'n of U.S., Inc.* v. *State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983). While parties and judges may be presumed to know what statutes apply to a given court order, the same cannot be said of administrative interpretations of those statutes. Such interpretations, whether in the form of regulations, directives, or guidelines, lack the legal force of statutes; I would decline to grant them that force in this context..

Although I do not agree that the judge's order in this case incorporated the department's interpretation of § 6 (*b*), in my view the department's seizure would still be constitutional if the language of § 6 (*b*) itself reserved to the department the right to make such a seizure. See *Ierardi, petitioner, supra*; *Russell Box Co.* v. *Commissioner of Corps. & Taxation, supra*; *Sheehan, petitioner, supra*. A close reading of the statute, in both its pre-amendment and post-amendment forms, however, does not indicate such a reservation. Both versions say nothing about the department's power to seize assets in the face of a court order establishing the amount due for unpaid child support and establishing a payment schedule to discharge that obligation. Although the statute grants to an administrative agency as well as to the court the power to establish the amount due to satisfy the support obligation, I doubt that the court would find constitutional a redetermination of that amount by the agency subsequent to a court order. For the purposes of constitutional analysis, I fail to see any meaningful distinction between the provisions of the court order determining the amount of arrearages and the method of repayment. Even if one views the statute as ambiguous with regard to a conflict between the court's power to order payment of arrearages and. the department's power to levy and to seize assets, such ambiguities should be resolved in favor of the obligor. See *Grady* v. *Commissioner of Revenue*, 421 Mass. 374, 377 (1995), and cases cited. See also *Slater* v. *United States Fidelity & Guar. Co.*, 379 Mass. 801, 804 (1980). Therefore, the court order did not reserve to the department the right to seize the obligor's property if the exercise of that right conflicted with the terms of the court order itself. I conclude that the department's seizure modified the court's order and was, therefore, unconstitutional. I dissent.