McHugh, J.
This is an appeal pursuant to G.L.c. 30A, §14 from an order of the Registrar of Motor Vehicles (“Registrar”), affirmed by the Board of Appeal on Motor Vehicle Liability Policies & Bonds (“Board”), suspending plaintiffs driver’s license for 60 days. The suspension was scheduled to commence on June 10, 1996, but commencement has been stayed by a preliminary order of this Court.
The case came on for a hearing on the merits on an administrative record accompanied by an agreed statement of facts.[1]
I. FACTS
On January 26, u1996, plaintiff was arrested and charged with operating a motor vehicle while under the influence of intoxicating liquor (“OUI”) in violation of G.L.c. 90, §24. Acting pursuant to G.L.c. 90, §24(l)(f)(l), the arresting officers asked plaintiff to submit to a breathalyzer test. He refused. Accordingly, pursuant to the same statute, his license was automatically suspended for one hundred twenty days, effective February 11, 1996 (“the breathalyzer suspension”).[2]
The OUI charge against plaintiff was brought before the Woburn Division of the District Court Department on February 28,1996. On that day, plaintiff admitted to facts sufficient to warrant a conviction. See Mass.RCrim.P. 12(a)(3). His case was thereupon continued without a finding for two years and he was ordered to participate in an alcohol education program. See G.L.c. 90, §24D. As part of its disposition of the OUI charge, the court ordered plaintiff to surrender his driver’s license for a period of sixty days (“the OUI suspension”). See id. The court ordered that the OUI suspension begin immediately and that it end on April 28,1996.[3] The court’s order, therefore, made the OUI suspension concurrent with the breathalyzer suspension.
The court forwarded notice of its action to the Registrar pursuant to G.L.c. 90, §24D. Thereafter, by order dated March 11, 1996, the Registrar, apparently acting under G.L.c. 90, §24D [4] suspended plaintiffs license on account of the OUI violation for a period of 60 days commencing June 10, 1996, the date the breathalyzer suspension ended. The Registrar’s order had the effect of making the OUI suspension consecutive to the breathalyzer suspension instead of concurrent with it.[5]
On March 21, 1996, plaintiff appealed to the Registrar from his March 11 order. The Registrar denied the appeal on that date. The following day, plaintiff appealed the Registrar’s decision to the Board. On April 10, 1996 the Board issued a decision affirming the Registrar’s decision and, on June 3, 1996, supplied a statement of reasons for its decision. In material part, the statement of reasons says as follows:
A representative of the Registrar indicated to the Board that the appellant’s license was suspended for 60 days on 6/10/96 due to a disposition of an oui case under G.L. 90, C 24E.[sic] The 60-day suspension was to run from 6/10/96 which is the date the 120-day suspension for the appellant’s failure to take the breathalyzer test ends. The Reg *94 istrar interpreted Ch. 90 as providing for consecutive rather than concurrent suspension periods in this instance. The penalties imposed by Sections 24(l)(f)(l) and other suspensions stemming from convictions of oui are distinct. Nowhere in Section 24 does it state that the penalties are to be concurrent.
II. APPLICABLE STATUTES
G.L.c. 90, §24(l)(f)(l), applicable at the time plaintiff was arrested, provides in pertinent part as follows:
Whoever operates a motor vehicle upon any way ... shall be deemed to have consented to submit to a chemical test or analysis of his breath or blood in the event that he is arrested for operating a motor vehicle while under the influence of intoxicating liquor . . . Such tests shall be administered at the direction of a police officer... If the person arrested refuses to submit to such tests or analysis, after having been informed that his license or permit to operate motor vehicles or right to operate motor vehicles in the commonwealth shall be suspended for at least a period of [120] days, but not more than one year for such refusal, no such test or analysis shall be made and he shall have his license or right to operate suspended in accordance with this paragraph for a period of [120] days ... If a person refuses to take a test under this section, the police officer shall do the following:
(i) immediately and on behalf of the registrar take custody of such person’s driver license or permit issued by the commonwealth;
(ii) provide each such person who refuses such test, on behalf of the registrar, with a written notice of intent to suspend in a format approved by the registrar;
(iii) issue to each such person who refuses such test, on behalf of the registrar, a temporary driving permit. . .
The police officer before whom such refusal was made shall immediately prepare a report of such refusal. . . Each such report shall be sent forthwith to the registrar . . . Any driver’s license or permit confiscated pursuant to this subparagraph (1) shall be forwarded to the registrar forthwith . . .
The license suspension shall become effective fifteen days after the offender has received the notice of intent to suspend from the police officer . . .
G.L.c. 90, §24D, in effect at the time of plaintiffs arrest, provides in pertinent part as follows:
Any person convicted of or charged with operating a motor vehicle while under the influence of intoxicating liquor, may if such person consents, be placed on probation for not more than two years and shall, as a condition of probation, be assigned to a driver alcohol education program as provided herein . . . and such person’s license or right to operate shall be suspended for a period of no less than [45] nor more than [90] days .... Such order of probation shall be in addition to any penalties imposed as provided in [G.L.c. 90, §24(l)(a)(l)] and shall be in addition to any requirements imposed as a condition for any suspension of sentence.
The suspended license or right to operate shall be retained in the probation office of the court for the duration of the suspension. The court shall immediately report the suspension to the registrar and the police department of the municipality in which the defendant is domiciled.
III. DISCUSSION
The foregoing facts and law present two distinct questions. The first concerns the proper interpretation of the relevant statutes. The second, and more important, concerns which of two conflicting interpretations must prevail when a conflict arises in the fashion it did in this case.
A. THE STATUTE
The Registrar and Board argue that, when read together, G.L.c. 90, §24(l)(f)(l) and G.L.c. 90, §24D, prescribe consecutive license suspensions for refusal to take a breathalyzer test and dispositions under §24D. That conclusion flows, the Registrar and Board argue, from the proposition that the Registrar is to hold the suspended license during the period of suspension for refusal to take a breathalyzer test[6] and the probation department must “retain" the license during the period of suspension imposed pursuant to §24D. Quite logically, the Registrar and Board argue, the license cannot be “held” or “retained” by two different entities at the same time. Accordingly, they argue, the Legislature must have intended consecutive, and not concurrent, periods of suspension.[7]
Second, the Board and Registrar argue, decided cases support the proposition that the suspensions are to be consecutive. They cite in that regard Commonwealth v. Crowell, 403 Mass. 381, 384 (1988), and Commonwealth v. Callen, 26 Mass.App.Ct. 920 (1988), rev. denied, 403 Mass. 1105 (1988), both of which held that suspensions under §24D could not be reduced by the amount of time for which a licence had been suspended pursuant to §24N. At the time of those decisions, §24N required an arraigning judge to suspend immediately the license of any person charged with OUI if the complaining officer showed that the defendant had registered a level of. 10 or greater on a breathalyzer at the time of arrest.[8]
Finally, the Registrar and Board argue that “weight should be given to any reasonable construction of a regulatory statute adopted by the agency charged with ... its enforcement.” International Brotherhood of Electrical Workers v. Western Mass. Electric Co., 15 Mass.App.Ct. 25, 28 (1982). The Registrar’s interpretation, they argue, is reasonable and should be given its appropriate weight.
*95 There is, to be sure, merit to the arguments the Board and Registrar have made. On the other hand, however, the Legislature was not completely silent on the “consecutive/concurrent” question for it expressly provided that the probationary period imposed under certain circumstances pursuant to §24D was to be “in addition to” any penalties provided for by c. 90, §24(l)(a)(l). Ordinarily, in construing statutes, the Legislature’s expression of one thing is the exclusion of others. See, e.g., Aquino v. Civil Service Comm’n, 34 Mass.App.Ct. 538, 541 (1993). The omission of any statutory reference to suspensions “in addition to” other suspensions thus might well be viewed as a Legislative election to leave that determination to the judge presiding at the proceeding brought pursuant to §24D. The inconsistent provisions for custody of a suspended license can be viewed simply as a Legislative determination that someone other than the driver whose license has been suspended will hold the license during the period of suspension. Finally, the principle of deference to administrative interpretations of statutory language does not invariably preclude independent judicial determinations of statutory meaning. See, e.g., Board of Education v. School Committee of Quincy, 415 Mass. 240, 243 (1993).
B. WHO DECIDES?
The precise and proper manner in which the relevant statutes intersect need not be decided here, however. The District Court, in the order it entered on February 28, 1996, decided that the OUI suspension would be concurrent with the breathalyzer suspension. Whatever powers the Registrar or the Board may have in other cases, they simply have no power to revise a judicial judgment in the very case in which that judgment is imposed.
The separation of powers embodied in Art. 30 of the Declaration of Rights of the Inhabitants of the Commonwealth is a fundamental principle on which our constitutional system rests. An essential ingredient of that principle is the proposition that judicial decisions cannot be revised or altered by the Executive or by the Legislature. To be sure, the effect of a particular judicial decision on future cases can be, and frequently is, changed by Executive or Legislative action. But the decision itself cannot be changed by another governmental branch.
The Supreme Judicial Court summarized the principle in the following terms in Gray v. Commissioner of Revenue, 422 Mass. 666, 670-71 (1996):
Article 30 provides: “In the government of this Commonwealth, the legislative department shall never exercise the executive and judicial powers, or either of them: the executive shall never exercise the legislative and judicial powers, or either of them: the judicial shall never exercise the legislative and executive powers, or either of them: to the end it may be a government of laws and not of men.” While we have “insisted on scrupulous observance of [art. 30’s] limitations,” ... we have also recognized that some overlap is inevitable, and “absolute division of the three general types of functions is neither possible nor always desirable.” . . . Our focus, therefore, is on “the essence of what cannot be tolerated under art. 30 . . . interference by one department with the functions of another.. . The executive and legislative departments impermissibly interfere with judicial functions when they purport to restrict or abolish a court’s inherent powers, ... or when they purport to reverse, modify, or contravene a court order.”
(Footnotes omitted).
Art. 30 thus “prohibits any legislative attempt ‘to grant a new trial or a rehearing in a cause in the courts, or to declare ineffective or to reverse, annul, change, modify, or affect the judgment of a court.’ ” Opinion of the Justices, 234 Mass. 612, 621 (1920). Similarly, “[when a government official denies rights in contravention of a court order, the executive department intrudes upon the judicial department’s authority in violation of art. 30.” Hoffer v. Commissioner of Correction, 397 Mass. 152, 156 (1986).
The recent decision in Gray v. Commissioner of Revenue, 422 Mass. 666 (1996), does not alter, or purport to alter, those fundamental principles. In Gray, the Court ordered Gray to pay past-due support payments paid at a specified schedule over a specified period of years. Gray complied with that order. Nonetheless, the Department of Revenue (“DOR”) notified Gray that if he did not pay the same past-due support within thirty days, it would levy on his property. Gray contended that the DOR’s action amounted to an impermissible modification of a court order.
At the time the order in Gray’s case entered, G.L.c. 209C, §18 provided, in essence, that any support order entered by the court was subject to the support-collection provisions of G.L.c. 119A, §6. Moreover, pursuant to c. 119A, §6, DOR had promulgated regulations permitting it to levy on bank accounts notwithstanding the depositor’s compliance with court orders for payment of past-due support. The order in Gray’s case made no mention either of the statute or the DOR regulations.
Against that backdrop, the Supreme Judicial Court held that the DOR action did not violate the principle of separation of powers. It did so, however, on narrow grounds that did not implicate fundamental principles involving separation of powers. The Court stated that, “[i]n the absence of anything in the order indicating that the judge did not intend it to be subject to [c. 119A, §6] and the [DOR’s] interpretations thereof, the statute and the [DOR] interpretation are presumed incorporated ‘as much as if thfose] provisions . . . had been written into the decree.’ ” Id. at 674-75.
Nor can any alteration of basic principles be found in Daley v. Board of Appeal on Motor Vehicle Liability Policies *96 & Bonds, 406 Mass. 857 (1990). There, the defendant was charged with a “second offense” OUI. He pleaded guilty, with the agreement of the court and the prosecutor, to so much of the charge as alleged a first offense. As a consequence, the court, among other things, suspended his license for 90 days. At the end of the 90 days, however, the Registrar refused to restore the license. He grounded his refusal on the fact that defendant’s plea of guilty in the District Court established a second offense within the statutorily prescribed period of time and the statute, G.L.c. 90, §24(l)(c)(2) prohibited him from “restorting] the license or reinstat[ing] the right to operate” of the convicted defendant “until two years after the date of the (second] conviction.” Claiming that the Registrar was wrong, the defendant appealed to the Board and, upon losing, to the courts.
The Supreme Judicial Court decided that the Registrar was correct. But it did so in a way that clearly showed the principle of separation of powers was being carefully observed. In the Court’s words
[b]y accepting the guilty plea, the judge did not pass on the question whether the offense was a first or second offense. The registrar, then, was free to conclude that the most recent conviction was for a second, like offense within a six-year period.
The plaintiff argues that, even if the judge was in error in ordering suspension of the plaintiffs license for only ninety days, “the Registrar is not empowered to change the sentence.” The short answer to that argument is that, in carrying out his statutory duty, the registrar has not purported to change the sentence. The sentence remains intact. The two-year revocation is in effect pursuant to statute.
Id. at 860-61.
Here, there is no statute like the statute involved in Gray. Here, there is no regulation of comparable tenor. Here, the Registrar’s action did not simply take independent administrative action on the same set of facts that had been placed before the court. Instead, the Registrar and the Board undertook to alter the terms of a judicial order because of their disagreement with its content. A clearer crossing of the line separating the executive from the judicial power is difficult to imagine. The Registrar’s order is invalid.[9]
ORDER
In light of the foregoing, it is hereby ORDERED that judgment enter VACATING the decision of the Board of Appeals issued on April 4, 1996 and declaring that:
(1) Plaintiffs license to operate a motor vehicle was suspended pursuant to G.L.c. 90, §24(l)(f)(l) for a period of one hundred twenty days commencing February 11, 1996.
(2) Plaintiffs license to operate a motor vehicle was suspended pursuant to G.L.c. 90, §24D pursuant to G.L.c. 90, §24D for a period of sixty days commencing February 28, 1996.
(3) The two suspensions were to be served concurrently.
(4) Neither the Registrar of Motor Vehicles nor the Board of Appeal on Motor Vehicle Liability Policies & Bonds is empowered to alter or change the court-ordered date of commencement of the suspension pursuant to G.L.c. 90, §24D.[10]

 Absent narrow circumstances not here present, see G.L.c. 30A, §14(6), review under c. 30A proceeds solely on the administrative record. Nevertheless, the parties agreed on certain facts and submitted their agreed statement to the Court. I therefore consider it. There is one conflict, see n.3, infra, between the agreed statement and the administrative record. In that instance, I have relied on the record, not the agreed statement.

 The fifteen-day difference stems from the fact that, under the statute, the arresting officer confiscates the driver’s license upon the driver’s refusal to take the test and gives the driver a temporary license. The officer then forwards the confiscated license to the Registrar who retains it during the period of the suspension. The suspension begins fifteen days after the licensee receives from the arresting officer a notice of intent to suspend the license. G.L.c. 90, §24(l)(f)(l).

 The parties have stipulated that “the date ‘April 12, 1996,’ was listed on the docket sheet after the notation of license suspension.” In fact the date “April 28, 1996" was listed on the sheet. The docket sheet sets out the disposition of the case in customarily cryptic form. The precise entry dealing with the license is as follows: ”LIC surrendered 60 days (4/28/96)." As the parties have agreed, I find that that entry reflects a court-ordered license suspension for a period of sixty days commencing on February 28 and expiring on April 28, 1996.

 The March 11 Order does not identify the Registrar’s source of purported authority and the parties have not agreed on that source.

 In his order, the Registrar acknowledged that plaintiffs license was then suspended. He also stated in his order that the remaining total suspension period, breathalyzer and OUI, was 151 days.

 Unlike §24D, §24(l)(f)(l) does not specifically state who is to hold the license during the period of the breathalyzer suspension. Apparently, the Registrar and Board believe that registrar’s obligation to hold the license during a breathalyzer suspension flows inferentially from the statutory requirement that the arresting officer forward the confiscated licence to the Registrar. The inference seems sound, for §24 as a whole speaks repeatedly of the circumstances under which the Registrar is obligated to “restore” licenses that have been confiscated for one reason or another.

 The Board and Registrar make another argument, this one far less persuasive. The Legislature, they say, said nothing in the statutes about concurrent suspensions and the Legislative silence must be taken as commanding consecutive sentences. There is in that argument an enormous logical gap. Moreover, notwithstanding the myriad penalties of all kinds the Legislature has provided for all sorts of transgressions, it is rare indeed for the Legislature to say anything one way or the other about concurrent or consecutive imposition of those penalties. The few occasions on which the Legislature has done so clearly evince a particular Legislative concern about the offense and penally at issue. See generally G.L.c. 94C, §32J (consecutive sentences for selling drugs in a school zone); G.L.c. 276, §82A (consecutive sentence for failure to appear after release on bail); G.L.c. 279, §8 (consecutive sentence for crimes committed while released on bail); G.L.c. 276, App. §l-l(e) (concurrent sentences for out-of-state prisoners). In this case, therefore, Legislature’s silence is silence, not an interpretive clue.

 The statute has since been amended a number of times and now requires suspension under a variety of other circumstances as well.

 In the brief they filed, the Board and the Registrar suggest that the Registrar actually did something different. Upon receipt of the court’s order, the argument goes, the Registrar simply suspended the running of the breathalyzer suspension so that OUI suspension could begin and end before the breathalyzer suspension resumed. That is an ingenious afterthought. It is unnecessary to determine whether that course of conduct, if carried out by the Registrar, would present any problems of its own because plainly that is not what the Registrar or the Board did. Instead, he changed then court-ordered date for commencement of the OUI suspension.

 I decline at this point to issue an order enjoining the Registrar from doing anything. The court has declared the law and operates on the customary assumption that the Registrar will follow that declaration unless and until it is vacated or altered through customary appellate proceedings. See generally Board of Health of North Adams v. Mayor of North Adams, 368 Mass. 554, 568-69 (1975); Alves v. Town of Braintree, 341 Mass. 6, 12 (1960).