**Dalleen RUCKER, et al., Plaintiffs,**

v.

**The SECRETARY of the TREASURY of the UNITED STATES, and the United States of America, Defendants.**

**Civ. A. No. 82–K–1450.**

United States District Court,
D. Colorado.

Feb. 26, 1986.

Glenn Meyers, Colorado Rural Legal Services, Denver, Colo., Jacquie Higinbotham, Colorado Rural Legal Services, Fort Morgan, Colo., for plaintiffs.

Michael D. Powell, Tax Div., Dept. of Justice, Washington, D.C., Robert N. Miller, U.S. Atty., Denver, Colo., for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, and ORDER

KANE, District Judge.

### I.

### FACTS

Plaintiff Rucker and husband filed a joint federal income tax return for 1981. The couple expected to receive a refund, partly from monies withheld from plaintiff's wages and partly as a result of an earned income credit. The Internal Revenue Service intercepted the entire tax refund and earned income credit to satisfy plaintiff's husband's past-due child support payments. No notice or opportunity to contest the intercept was given to the plaintiff before the withholding of these funds.

The Service claimed authority for such action under 42 U.S.C. § 664.[1]

Plaintiff first contacted the Department of Social Services and then the IRS to request the return of her allocable portion of the monies withheld. She was instructed to file an amended return in order to obtain her refund and earned income credit. In October, 1982, having followed these procedures, she received her proportionate share of the earned income credit and the tax refund.

On August 31, 1982, after filing her amended return but before receiving any monies from the IRS, plaintiff filed an action against the Secretary of the Treasury, seeking class certification, and declaratory and injunctive relief.[2] Plaintiff argued that the government is not authorized to retain funds owed to an individual who has no child support obligation, and that such action constituted the taking of property without notice and violated the Due Process Clause of the Fifth Amendment to the Constitution of the United States. Plaintiff also asserted that 42 U.S.C. § 664 does not apply to the transfer of earned income credits. Two other parties petitioned to intervene in this action pursuant to Rule 24 of the Federal Rules of Civil Procedure, and those motions were granted.

Defendant moved to dismiss the case and plaintiff moved for summary judgment on three issues and to certify a class pursuant to F.R.Civ.P. 23. On February 10, 1983, I granted defendant's motion to dismiss, holding that "(t)he absence of a 'case or controversy' renders this court without jurisdiction." *Rucker v. Secretary of the Treasury of the United States*, 555 F.Supp. 1051, 1053 (D.Colo.1983). I held that Rucker's fifth amendment and tax refund claims were moot because she had received her allocable share of the income tax refund. I also ruled that earned income credits are subject to the intercept program and, because plaintiff had received an allocable share of this credit, her earned income credit claim was also moot.

Plaintiff appealed. She claimed that *no* portion of the earned income credit was subject to the intercept program. The Tenth Circuit reversed and remanded the case to me. *Rucker v. Secretary of the Treasury of the United States*, 751 F.2d 351 (10th Cir.1984). The court held that no portion of the earned income credit is subject to the intercept program, and that the case was not moot because the IRS had refunded only a portion of the earned income credit. The court adopted Rucker's argument that the earned income credit is neither a refund nor an overpayment with-

---

1. The federal-state intercept program is authorized by section 2331 of the Omnibus Budget Reconciliation Act of 1981, 42 U.S.C. § 664, and 26 U.S.C. § 6402, Pub.L. No. 97–35, 95 Stat. 860 (1981) (Omnibus Act). Under this program, federal income tax refunds due a taxpayer may be transferred to a state to the extent of a taxpayer's past-due child support obligations. To intercept refunds and/or earned income credits for child support obligations, the state agency which has provided support for the children of the child support obligor certifies to the defendant the name of the obligor and the amount owed to the state agency. The defendant then intercepts and holds both the obligor's and obligor's spouse's refund, as well as the earned income credit owing to the family of the obligor and the nonobligated spouse. If the obligor and the nonobligated spouse have filed a joint return, the entire refund is held by the defendant. After the refund has been intercepted, the defendant gives notice to the taxpayers that their refund and/or earned income credit is being

held. Defendant also notifies the taxpayers that if they have filed a joint return, and a portion of the refund is attributable to the income of the nonobligated spouse, the taxpayers can file a 1040X return, seeking that portion of the refund.

2. Plaintiff's claims against the United States arise under 26 U.S.C. § 7422 (Internal Revenue Code). Jurisdiction of those claims is conferred on this court by 28 U.S.C. § 1346(a)(1) (Internal Revenue). Plaintiff's claims against the Secretary of the Treasury arise under 5 U.S.C. § 704 (Administrative Procedure Act) and the Fifth Amendment to the Constitution of the United States. Jurisdiction of those claims is conferred on the court by 28 U.S.C. § 1331 (Federal Question).

Plaintiff's claims are not barred by the doctrine of sovereign immunity. *See Rucker v. Secretary of the Treasury of the United States,* 751 F.2d 351, 355 (10th Cir.1984) (and cases cited therein).

in the meaning of 42 U.S.C. § 664(a) or 26 U.S.C. § 6402(a).[3]

The Tenth Circuit did not address, however, plaintiff's claim that the IRS's withholding of a portion of the refund attributable to her earnings violated due process or my finding that her claims regarding interception of her share of the *income tax refund* was moot.

In February, 1985, this case was reopened. Plaintiffs filed an amended motion for certification of class action, wherein they seek to certify two classes:

CLASS I: Residents of Colorado, Wyoming, Utah, New Mexico, Oklahoma, and Kansas who filed or will file individual or joint income tax returns for any one or more years including and subsequent to 1981, and who were entitled to an earned income credit, part or all of which has been withheld by the Internal Revenue Service under the asserted authority of 42 U.S.C. § 664.

CLASS II: Residents of Colorado, Wyoming, Utah, New Mexico, Oklahoma, and Kansas, who filed or will file joint federal income tax returns for any one or more years including and subsequent to 1981, whose spouses owe money to any state of the United States, and who are/were entitled to a refund or tax withheld, exclusive of their spouses earnings, part or all of which has been held by the Internal Revenue Service under the asserted authority of 42 U.S.C. § 664.

The parties also rebriefed the issues initially raised by plaintiff in her motion for summary judgment. Defendant argues that all three issues are moot at this time. Plaintiff argues that the class should be broadened and that I should rule on the class certification issue as well as whether plaintiff's due process rights have been violated by the lack of notice given by the IRS in holding onto her tax refund.

The time for defendants to have petitioned for certiorari before the United States Supreme Court in this case has run and the defendants have not so petitioned. The defendants have not requested a stay of any proceedings before this court at this time. I am aware that *Sorenson v. Secretary of the Treasury,*[4] is on certiorari to the Supreme Court of the United States, but I am not addressing the issue before the Supreme Court concerning the earned income credit in this order. That matter has been determined by the Tenth Circuit. I need only determine if class certification is appropriate on that question.

**3.** Two provisions of the Omnibus Act are relevant here. The first is an amendment to the Social Security Act, 42 U.S.C. § 664 (1982), which provides for reimbursing states that have supported the taxpayer's children through the Aid to Families with Dependent Children program (AFDC). Section 664(a) authorizes the Secretary of the Treasury to withhold "refunds of Federal taxes paid" which are due to a parent of children supported by AFDC, and to transfer these funds to an appropriate state agency to satisfy the parent's child support obligation. The second provision is an amendment to section 6402 of the Internal Revenue Code, 26 U.S.C. § 6402(c) (1982), which implements the procedure authorized by section 664(a) and provides that "[t]he amount of any overpayment to be refunded to the person making the overpayment" shall be reduced by the amount of any past-due child support.

The Tenth Circuit noted the conflicting jurisdictional viewpoints regarding this issue. *Compare Nelson v. Regan,* 731 F.2d 105, 111–12 (2d Cir.), *cert. denied,* ── U.S. ──, 105 S.Ct. 175, 83 L.Ed.2d 110 (1984) (the earned income credit is not subject to interception under 26 U.S.C.

§ 6402(c)) *with Coughlin v. Regan,* 584 F.Supp. 697, 706–07 (D.Maine 1984) *and Sorenson v. Secretary of the Treasury,* 557 F.Supp. 729, 733–34 (W.D.Wash.1982), *aff'd* 752 F.2d 1433 (9th Cir.), *cert. granted,* ── U.S. ──, 105 S.Ct. 3475, 87 L.Ed.2d 611 (1985) (26 U.S.C. § 6402(c) authorizes interception of the earned income credit). The Tenth Circuit adopted the *Nelson* approach. "Interpreting the term 'overpayment' in section 6402(c) so as not to include the earned income credit results in consistency with section 664(a) which authorizes only withholding of federal tax refunds. Moreover, we believe that this interpretation furthers the congressional purpose in enacting the earned income credit." *Rucker,* 751 F.2d at 357. The Court of Appeals clearly held that "withholding of any portion of the earned income credit due an otherwise eligible recipient" is unlawful. *Id.* at 357.

**4.** *Sorenson v. Secretary of the Treasury,* 557 F.Supp. 729 (W.D.Wash.1982), *aff'd,* 752 F.2d 1433 (9th Cir.), *cert. granted,* ── U.S. ──, 105 S.Ct. 3475, 87 L.Ed.2d 611, 53 U.S.L.W. 3881 (1985).

## III.

### Certification of Class I

■ Plaintiff claims, and the IRS does not dispute, that she is still owed $405 of the earned income credit. I am herein ordering the IRS to return the remainder of the earned income credit to the Ruckers, if it has not done so already.

Plaintiff still requests that I certify a class of persons similarly situated in all the states now bound by the Tenth Circuit's *Rucker* opinion. The prerequisites to a class action, *see* Rule 23(a), may have been met here. Rule 23(b), however, provides that even if those prerequisites are met, a class action may be maintained only under certain conditions.[5] I find that plaintiff's request does not fall within Rule 23(b).

First, Rule 23(b)(1)(A) or (B) is not applicable. Any further adjudications brought by members of the proposed class would be bound by the Tenth Circuit's opinion in *Rucker*. There is no risk of incompatible standards being set because the law already has been determined. All I am doing in this order, with respect to the earned income credit issue, is requiring the IRS to return plaintiff's earned income credit to her. There is no indication that individual adjudications would impair other members' ability to protect their interests.

It may be that the IRS previously has refused to act on grounds generally applicable to the class, but I have no evidence that the IRS is now not abiding by the Tenth Circuit's ruling. Thus, plaintiff does not fall within Rule 23(b)(2).

With regard to Rule 23(b)(3), I simply do not believe that a class action is "superior to other available methods for the fair and efficient adjudication of the controversy." In fact, the controversy has been resolved by the Tenth Circuit. This order simply directs the IRS to return $405 to the Ruckers, if it has not done so already, and return any outstanding earned income credits to plaintiff-intervenors.

My decision is consistent with this circuit's holding that class certification determination is within the sound discretion of the trial court, and that its conclusions will not be disturbed absent showing of abuse of discretion. *Milonas v. Williams*, 691 F.2d 931 (10th Cir.1982), *cert. denied*, 460 U.S. 1069, 103 S.Ct. 1524, 75 L.Ed.2d 947 (1983). Thus, plaintiff's motion for class certification of Class I is denied.

## IV.

### Plaintiff's Due Process Issue

■ Plaintiff still argues, and seeks summary judgment declaring, that the taking of property (withholding her portion of the tax refund) without notice violates the due process clause of the Fifth Amendment. Although it is unclear whether the

---

5. Rule 23(b) requires, in addition to the prerequisites of Rule 23(a), that:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class; or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, *and that a class action is superior* to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Rule 23(b) (emphasis added).

Tenth Circuit intended to remand this question to me, or just the earned income credit question, I will address it briefly. My inquiry will focus on whether the procedures followed by the state and federal government in intercepting plaintiff's refund satisfied the constitutional imperative of the Fifth Amendment.

The Supreme Court has provided the framework for determining the requirements of due process under the specific circumstances of this litigation.

> [I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).[6]

The property interest at issue here is the nonobligated spouse's interest in his or her tax refund. A tax refund is not a subsidy; it is the restoration to a taxpayer of his or her own funds. The interception of the refund is a diversion of the taxpayer's property. *See, e.g., Nelson v. Regan,* 560 F.Supp. 1101, 1108 (D.Conn.1983); *Sorenson v. Secretary of the Treasury,* 557 F.Supp. 729, 738, (W.D.Wash.1982), *aff'd,* 752 F.2d 1433 (9th Cir.), *cert. granted,* ––– U.S. –––, 105 S.Ct. 3475, 87 L.Ed.2d 611

(1985). There is a potential risk of erroneous deprivation through the current procedures. Not until the taxpayers contacted the Colorado Department of Social Services were they informed of procedures for the unobligated spouse to obtain her share of the refund. Rucker then had to refile a 1040X form and wait for a refund. "Certainly no concept of fairness embodied in due process would require this onus on an unobligated taxpayer and this delay to retrieve funds rightfully hers." *Jahn v. Regan,* 584 F.Supp. 399, 417 (E.D.Mich.1984).

The government interest, however, is also undeniably significant. The intercept program gives the state the opportunity to recoup the amount of assistance payments which it has been compelled to advance because a judgment debtor has defaulted. The benefits of this policy accrue directly to the citizenry.

The nonobligated spouse has a recognized interest in obtaining her tax refund, *Marcello v. Regan,* 574 F.Supp. 586, 596 (D.R.I.1983) and the government has a significant interest in implementing the intercept program. (The entire problem could be avoided if the nonobligated spouse filed a separate return.) The real issue, however, is not deprivation but delay. The essential question is whether the procedures and delay in the refund process to the nonobligated spouse are constitutionally permissible. As noted in *Jahn v. Regan,* 584 F.Supp. 399 (E.D.Mich.1984):

> Typically, the funds constituting a tax refund have *never been* in the taxpayer's possession. Tax refunds normally take some time to be determined and sent to

---

6. *See also Marcello v. Regan,* 574 F.Supp. 586 (D.R.I.1983), which addressed this issue:

> The United States Supreme Court "consistently has held that some form of hearing is required before an individual is finally deprived of a property interest." *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976). *Accord Wolff v. McDonnell,* 418 U.S. 539, 557–58, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974). Essential to the right to be heard is adequate notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Company,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). While announcing broad due process guidelines, "[i]t has been said so often by [the Supreme] Court and others as not to require citation of authority that due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972).
>
> *Id.* at 596.

the taxpayer. Therefore, although the taxpayer certainly has significant interest in the funds, his interest is not one hinged on the *immediacy* of receiving the refund.

*Id.* at 415 (emphasis in original).

The second *Eldridge* factor concerns the adequacy of procedures to guard against the risk of erroneous deprivation. The filing of the amended return (the 1040X), which allows the IRS to determine the amount of the nonobligated spouse's allocable share of the refund, is a straightforward procedure involving minimal calculations. It does not require factual determinations or involve issues of credibility. Since the filing of an amended return involves only simple calculations, no further procedural safeguards are necessary because of the low risk of error.

The third factor requires the balancing of complex governmental machinery with ideal concepts of procedural "fairness." Generally recognized concepts of "fairness" consist of pre-deprivation notice and formal hearing. *See, e.g., Mitchell v. W.T. Grant, Co.,* 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974); *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); *Sniadach v. Family Finance Corp. of Bay View,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969).

The *Mathews* Court addressed this public interest factor at length. It found that

Financial cost alone is not a controlling weight in determining whether due process requires a particular procedural safeguard prior to some administrative decision. But the Government's interest, and hence that of the public, in conserving scarce fiscal and administrative resources is a factor that must be weighed. At some point the benefit of an additional safeguard to the individual affected by the administrative action and to society in terms of increased assurance that the

action is just, may be outweighed by the cost.

But more is implicated in cases of this type than ad hoc weighing of fiscal and administrative burdens against the interests of a particular category of claimants. The ultimate balance involves a determination as to when, under our constitutional system, judicial-type procedures must be imposed upon administrative action to assure fairness.

*Mathews v. Eldridge,* 424 U.S. 319, 335, 347–48, 96 S.Ct. 893, 903, 908–09, 47 L.Ed.2d 18 (1976).

Since the correct apportioning of the refund cannot be accomplished from the information provided on a joint tax return, some further filing by the nonobligated spouse is necessary. Under the circumstances in this case, the notice and procedures for the nonobligated spouse to obtain her share of a joint tax refund complied with constitutional standards. If the return is overly delayed, the nonobligated spouse would be entitled to statutory interest. To require other procedures would not be justified under the tri-partite analysis of *Mathews.*

Further, and significantly, I note that whatever inadequacies in the notice provisions may have existed have been addressed by Congress. Extensive amendments to 42 U.S.C. § 664 were passed on August 16, 1984, *see* Pub.L. 98–378, §§ 11(d), 21(a), (b), (c), (g), 98 Stat. 1318, 1322, 1324, 1326 (1984), and made applicable to refunds payable under section 6402 of Title 26 after December 31, 1985. I am satisfied that these amendments rectify any legitimate complaints plaintiff Rucker had concerning the notice provisions.

Considering the plaintiff's interest, the substantial government interest, the large number of tax offsets compared to the relatively small number of nonobligated spouses whose share of a joint tax return will be adversely affected,[7] and the reason-

---

7. *See Jahn v. Regan,* 610 F.Supp. 1269, 1279–80 (D.C.Mich.1985), for statistical data regarding the soundness of the transfer system. Data fur-

ther indicates that the number of nonobligated spouses who separately have contributed to a

ableness and efficiency of the system,[8] the procedures established by the IRS satisfy procedural due process.

I also decline to certify plaintiff's proposed Class II.

It is therefore ORDERED that:

1. Plaintiff's motion for class certification is denied.

2. To the extent it has not been rectified, the IRS shall pay monies due and owing to plaintiff and plaintiff-intervenors within 120 days.

3. The notice procedures established by the IRS regarding the nonobligated spouse's right to obtain her share of a joint tax refund do not violate the Due Process Clause of the Fifth Amendment.

4. Plaintiff's motion for summary judgment on the due process issue is denied. Defendant's cross motion for summary judgment on that issue is granted. Each party shall bear her or its own costs.

---

joint refund which will be intercepted is relatively small.

**8.** The state can utilize the transfer system only after all other reasonable methods of collection have been exhausted. The purpose of this re-

quirement is "to avoid treating IRS collection as the primary method of enforcement where, in fact, other effective means are readily available for the State to use." 47 Fed.Reg. 7427 (1982).