RICHARD LAUBINGER & others[1] *vs.* DEPARTMENT OF
REVENUE & another.[2]

No. 95-P-1441.

Plymouth. June 11, 1996. - November 14, 1996.

Present: DREBEN, GILLERMAN, & LAURENCE, JJ.

*Divorce and Separation,* Child support. *Personal Property,* Bank account.
   *Civil Rights,* Immunity of public official. *Due Process of Law,* Notice,
   Hearing.

Claims for damages brought under 42 U.S.C. § 1983, against the Depart-
   ment of Revenue and a deputy commissioner, could not be maintained
   where neither the State agency nor the commissioner in his official
   capacity were "persons" amenable to suit under § 1983: a Superior
   Court judge correctly ordered summary judgment in favor of the
   defendants. [601-602]
A claim for damages under 42 U.S.C. § 1983, arising out of the levy and
   seizure, without notice or hearing, of the nondebtor plaintiff's assets in a
   joint bank account, could not be maintained against a deputy commis-
   sioner of the Department of Revenue in his individual capacity where
   the defendant's actions in seizing the assets on behalf of the department
   pursuant to the provisions of G. L. c. 119A were discretionary and thus
   he was entitled to qualified immunity from liability. [602-605]
A civil plaintiff did not demonstrate that her claims asserting violation of
   due process (lack of notice and hearing) in the seizure of her assets in a
   joint bank account by the Department of Revenue were so defined or
   clearly established in 1993 that the revenue official who authorized the
   administrative levy would reasonably then have known that he was
   violating the nondebtor plaintiff's right to notice before the seizure;
   consequently the official was entitled to qualified immunity for his ac-
   tions. [605-608]
In the circumstances of a seizure of assets by the Department of Revenue
   pursuant to G. L. c. 119A to satisfy child support obligation arrearages
   established by court order, the debtor's due process rights to adequate
   notice and an opportunity to be heard were not violated. [609]
Claims made on behalf of minors arising from the seizure of their parents'

---

[1]Joyce A. Laubinger, individually, and as next friend of Jonathan,
Jeremy, and Jessica Bradbury.

[2]Jerry J. Fay, the deputy commissioner of child support enforcement of
the Department of Revenue.

joint account by the Department of Revenue pursuant to G. L. c. 119A were properly dismissed for lack of standing where there was no allegation of any ownership interest of the children in the account in question. [609-610]

This court declined to consider appellate argument in a civil case with respect to certain documents that were not part of the record. [610-611]

CIVIL ACTION commenced in the Superior Court Department on February 8, 1993.

The case was heard by *Hiller B. Zobel*, J., on a motion for summary judgment.

*Joyce Laubinger*, pro se.

*Salvatore M. Giorlandino*, Assistant Attorney General (*Brad Kramer* with him) for the Department of Revenue & another.

DREBEN, J. Richard Laubinger and his second wife, Joyce, acting pro se, brought this action under 42 U.S.C. § 1983 (1994) against the Department of Revenue (department) to recover monies seized, allegedly in violation of due process, from their joint bank and credit union accounts. The funds were taken, without notice to Joyce, to satisfy Richard's child support arrearages to the children of his prior marriage to Elizabeth. The plaintiffs claimed damages for emotional distress on account of the wrongful seizure,[3] and Joyce also made claims on behalf of the three children of her previous marriage. A judge in the Superior Court allowed the defendants' motion for summary judgment. The question of the return of the funds is no longer a matter of contention between the parties as the department, at oral argument, indicated its willingness to return the monies, presumably with interest.[4] The other claims of the plaintiffs, however, remain to be addressed, and we must determine whether the defendants are, as they claim, qualifiedly immune from suit.

---

[3]Joyce alleged, among other things, that she became ill and was hospitalized as a result of the defendants' actions.

[4]Plaintiffs had refused a similar offer made by the department in the Superior Court. We assume payment will be made forthwith.

This case is unlike *Dionne* v. *Bouley*, 757 F.2d 1344, 1348-1349 (1st Cir. 1985), where a question was not considered moot after a release of lien. Here the matter will probably not arise again as Joyce is not likely to place her funds in a joint account. Indeed, in her brief she claimed that had she known of the collection practices of the department she would not have deposited her money in the joint account.

We conclude that they are immune and affirm the judgment dismissing the complaint.

1. *Background*. After Richard failed to meet his child support obligations under a 1988 judgment of divorce, Elizabeth and the children received welfare benefits under the Commonwealth's program for Aid to Families with Dependent Children. A 1991 "temporary order" of a probate judge required Richard to pay, by wage assignment, $200 weekly child support to the department and, in addition, $10 weekly to the department and a like sum to Elizabeth to satisfy his arrearages of $816 owed to Elizabeth and $3,261 owed to the department.

On April 28, 1992, the department made written demand on Richard for payment of $4,601, the amount claimed to be then due, within thirty days. The demand notice, which listed Jerry J. Fay as deputy commissioner, informed Richard that if he failed to pay in full within the time stated, his debt would become "an assessment subject to the full range of administrative collection remedies" including "[l]ien, levy and seizure of real or personal property pursuant to M.G.L. c. 119A, sec. 6."[5] Additional notices of assessment and demand were sent to Richard by the department on June 5, 1992, and July 26, 1992. These notices declared that the assessment was now a lien on any "real and/or personal property" belonging to him and that the department would proceed to levy on his property without additional advance notice if the amount was not paid within thirty days. The notice contained a reference to administrative review but in large letters stated: "The only defense to these collection remedies is that you do not owe the money."

On February 1, 1993, the department sent levy notices, over the signature of defendant Fay, with copies to Richard, to several financial institutions instructing them to remit to the department all funds held by Richard up to $4,497 for

[5]The notice also stated that "[a] child support obligation automatically becomes a judgment by operation of law on the day it becomes due and is not paid. Therefore the court has no power to retroactively modify or reduce arrears owed. . . . Even if you are paying current support and a periodic payment towards your arrears by income assignment, [the department] is authorized by law to use additional methods to collect past-due support."

past due child support.[6] The notices recited that the levy was applicable even if the account was a joint account and even if the support obligor had been making periodic payments toward past due support. This appears to have been the first notice to Richard that a joint account was subject to levy.

The levy notices resulted in the seizure of $315.36 from joint bank and credit union accounts of Richard and Joyce. The copies to Richard of the notices sent to the financial institutions were accompanied by a form advising Richard of his opportunity to request an administrative review of the department's levy actions. Since the form is not contained in the record, we do not know the nature and extent of the review as explained in the form.

As previously indicated, the defendants' motion for summary judgment was allowed, the complaint was dismissed, and this appeal followed. As also previously indicated, there is no longer any contention about the return of the funds seized; that claim has become moot.

2. *Joyce's claims for damages under § 1983 against the department and against Deputy Commissioner Fay in his official capacity.* Section 1983 of Title 42 of the United States Code (1994) provides in relevant part:

> "Every *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress" (emphasis supplied).

Joyce's claims against the department may not be maintained because an agency of the Commonwealth is not a "person" subject to suit for monetary damages under § 1983. See *Will* v. *Michigan Dept. of State Police*, 491 U.S. 58, 70-71 (1989); *Johnson* v. *Rodriguez*, 943 F.2d 104, 108-109 (1st Cir. 1991), cert. denied, 502 U.S. 1063 (1992) (State agency cannot be

---

[6]Only one of the notices is included in the record appendix. We assume that the other notices are identical except that the levy notice to one bank was dated April 14, 1993.

sued for damages in a § 1983 claim). Similarly, Joyce's claim for damages against Deputy Commissioner Fay in his *official* capacity must be dismissed, as "State officials sued for damages in their official capacity are not 'persons' under § 1983 because the law treats the action as [one] against the official's office and hence against the State." *O'Malley* v. *Sheriff of Worcester County*, 415 Mass. 132, 141 n.13 (1993). "[T]o avoid a State's sovereign immunity to a damages suit, a plaintiff must sue the State official in his individual and not his official capacity." *Ibid.*

3. *Qualified immunity — Joyce's claims against Fay in his individual capacity.* We turn, therefore, to the more difficult question of Joyce's claim for damages against the only remaining defendant, Fay, in his individual capacity. The gist of Joyce's complaint is that the defendant is liable because he violated her due process rights by depriving her of her property without notice or an opportunity for hearing. While Joyce's statements as to her ownership of the funds in the summary judgment materials were not always consistent, the defendant does not dispute that she, as a joint depositor, is entitled to challenge a creditor's attachment or levy. See *R.H. White Co.* v. *Lees*, 267 Mass. 112, 115 (1929). A joint owner has the right to show the extent of his or her real interest. *Ibid.* See *Blanchette* v. *Blanchette*, 362 Mass. 518, 521-523 (1972); *Heffernan* v. *Wollaston Credit Union*, 30 Mass. App. Ct. 171, 177 n.7 (1991). Cf. *United States* v. *National Bank of Commerce*, 472 U.S. 713, 728-729 (1985) (statutory scheme permitting Internal Revenue Service levy and seizure of joint property is subject to postseizure administrative or judicial proceeding in which the ownership of funds can be resolved). Nor does the defendant dispute that Joyce as a joint depositor has due process procedural rights. See *Zinermon* v. *Burch*, 494 U.S. 113, 125-126 (1990)(§ 1983 action may be brought for a violation of procedural due process). See also *Carey* v. *Piphus*, 435 U.S. 247, 259-261 (1978); *Farrar* v. *Hobby*, 506 U.S. 103, 112 (1992).

What Fay does contest is that Joyce was constitutionally entitled to preseizure notice, and he claims that in any event he is entitled to qualified immunity, an affirmative defense, *Gomez* v. *Toledo*, 446 U.S. 635, 640 (1980), which he raised in his answer. Because no material fact is in dispute, the question before us is one of pure law.

The doctrine of qualified immunity shields public officials who are performing discretionary functions, not ministerial in nature, from civil liability in § 1983 actions if at the time of the performance of the discretionary act, the constitutional or statutory right allegedly infringed was not "clearly established." *Harlow* v. *Fitzgerald*, 457 U.S. 800, 818 (1982). *Breault* v. *Chairman of the Bd. of Fire Commrs. of Springfield*, 401 Mass. 26, 31-32 (1987), cert. denied, 485 U.S. 906 (1988). *Dobos* v. *Driscoll*, 404 Mass. 634, 646-647, cert. denied sub nom. *Kehoe* v. *Dobos*, 493 U.S. 850 (1989). *Matthews* v. *Rakiey*, 38 Mass. App. Ct. 490, 493 (1995).[7] Accordingly, qualified immunity must be decided according to the law in effect at the time of the alleged violation.

Since "[e]ven defendants who violate constitutional rights enjoy a qualified immunity that protects them from liability for damages unless it is further demonstrated that their conduct was unreasonable under the applicable standard," *Davis* v *Scherer*, 468 U.S. 183, 190 (1984), and since resolution of the constitutional question under current law presents difficult questions unnecessary to our decision, we proceed directly to the questions raised by the qualified immunity defense, without deciding what notice or hearing is constitutionally required under current law. *Acierno* v. *Cloutier*, 40 F.3d 597, 606 n.7 (3d Cir. 1994). See *Duarte* v. *Healy*, 405 Mass. 43, 46 (1989).

The first question to be determined in analyzing qualified immunity is whether Fay's actions in levying and seizing the joint accounts without prior notice or hearing were discretionary functions. "A law that fails to specify the precise action that the official must take in each instance creates only discretionary authority; and that authority remains discretionary however egregiously it is abused." *Davis* v. *Scherer*, 468 U.S. at 197 n.14. *Breault* v. *Chairman of the Bd. of Fire Commrs. of Springfield*, 401 Mass. at 34 n.8. *Duarte* v. *Healy*, 405 Mass. at 48.

The department proceeded under G. L. c. 119A, § 6, prior to its amendment by St. 1993, c. 460, §§ 29-31. Subsection (*a*) of § 6 grants the department numerous choices in instituting collection procedures for arrearages which have accrued

---

[7]The immunity is an entitlement not to stand trial or face other burdens of litigation. *Mitchell* v. *Forsyth*, 472 U.S. 511, 526 (1985). *Behrens* v. *Pelletier*, 116 S. Ct. 834, 839 (1996).

pursuant to court order.[8] Subsection (*b*) states that the agency has "the power to collect the delinquent support [determined by the agency to be due] . . . through the use of lien, levy and seizure . . . Under § 6(*b*)(2), the agency can determine whether to waive or release a lien upon the property of a support obligor, and§ 6(*b*)(3) grants the department discretion whether to levy upon a support obligor's property and to determine which property to levy upon, including joint property.[9]

The conclusion that a levy on joint property is authorized does not, however, determine what notice and hearing procedures are to be followed. Although G. L. c. 119A, § 6, requires notice and other procedural safeguards to be given

---

[8]Subsection 6(*a*), as amended through St. 1987, c. 490, § 15, provides that the agency "is hereby authorized to institute collection procedures for all arrearages which have accrued against child support payments owed pursuant to a court judgment or support order . . . . These collection procedures shall include, but not be limited to, notification of employers that a wage assignment is in effect and not suspended; notification of obligors; demand letters; use of state and federal tax refund intercept programs; initiation of contempt proceedings; use of lien, levy and seizure as provided in subsection (*b*); use of the services of any person providing collection services to the commissioner of revenue for the collection of state taxes; seeking capias in appropriate situations; attachment of or lien against property, . . . and any other civil remedy available for the enforcement of judgments or for the enforcement of support or custody orders entered under chapter two hundred and eight, two hundred and nine, two hundred and nine C or two hundred and seventy-three A. The . . . agency may provide by regulation for the assessment of interest and penalties against delinquent obligations under the provisions of paragraph (1) subsection (*b*)."

[9]The levy provisions of G. L. c. 119A, § 6(*b*)(3), as amended through St. 1987, c. 490, § 15, provide, inter alia, "[w]henever any property or *right to property* upon which levy has been made is not sufficient to satisfy the claim of the commonwealth for which levy is made, [the department] may, thereafter, and as often as may be necessary, proceed to levy in like manner upon any other property liable to levy of the person against whom such claim exists . . ." (emphasis supplied).

The levy provisions in G. L. c. 62C, § 53(*a*), authorizing the department to collect taxes provide that it shall be lawful for the Commissioner to "levy upon all property and *rights to property*" (emphasis supplied). In *Prudential-Bache Sec., Inc.* v. *Commissioner of Rev.*, 412 Mass. 243, 245 (1992), the Supreme Judicial Court, citing to *United States* v. *National Bank of Commerce*, 472 U.S. at 724-725, stated that under G. L. c. 62C, § 53(*a*), "[a] levy on a person's real estate or bank account, *even a joint bank account*, is authorized" (emphasis supplied).

the support obligor, see, e.g., §§ 6(*b*)(1), 6(*b*)(7), there is no language in the statute that specifies the precise action the department (or defendant Fay) is required to take with regard to nonobligor parties to joint accounts. Cf. *Duarte* v. *Healy*, 405 Mass. at 48. Compare and contrast *Breault* v. *Chairman of the Bd. of Fire Commrs. of Springfield*, 401 Mass. at 34. Our examination of the statute leaves no doubt that the defendant's actions with respect to notice and hearing as to Joyce's joint property were discretionary actions under § 1983.

We turn next to the other requirement set forth in *Harlow* v. *Fitzgerald*, 457 U.S. at 818, namely, whether defendant Fay's actions in not giving Joyce notice or an opportunity to be heard prior to the seizure violated constitutional rights that were "clearly established" at the time of the seizure. The reason for this requirement is that "if the law was clearly established and the [defendant] failed to prove extraordinary circumstances justifying [his] lack of knowledge of the law, then the immunity defense fails." *Dobos* v. *Driscoll*, 404 Mass. at 646. As stated by the Supreme Court and reiterated by the Supreme Judicial Court in *Dobos*, "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. . . . [T]he unlawfulness must be apparent." 404 Mass. at 647, quoting from *Anderson* v. *Creighton*, 483 U.S. 635, 639-640 (1987).

Immunity does not follow from the good faith of the official; the test is objective, that is, "whether a reasonable [official] would have known that the conduct violated established constitutional norms in the circumstances as they appeared to the defendant [official]." *Pasqualone* v. *Gately*, 422 Mass. 398, 402-403 (1996). *Martino* v. *Hogan*, 37 Mass. App. Ct. 710, 718 (1994). Whether an asserted right was clearly established at a particular time so that a public official who allegedly violated the right has no qualified immunity "presents a question of law" which "must be resolved *de novo* on appeal." *Elder* v. *Holloway*, 510 U.S. 510, 516 (1994). We can discern no clearly established law at the time of the seizure requiring ex-

plicit preseizure or postseizure notice or a hearing other than the present action.[10]

At the relevant time in 1993 there was not, and there still is not, much authority on the issue of what notice and other procedural safeguards must be given a joint depositor or other joint owner of personal property to satisfy due process. The most favorable cases to Joyce involve tax intercepts. She relies on *Jahn* v. *Regan*, 584 F. Supp. 399, 416-417 (E. D. Mich. 1984), *S.C.*, 610 F. Supp. 1269 (1985), where a joint tax refund was seized because of the husband's delinquency in his child support obligations. The court noted that the wife, whose portion of the joint refund was seized not because of any debt or obligation on her part, but simply because she had filed her tax form jointly with her husband, was entitled to greater procedural protection than her husband. Instead, she had received fewer procedural safeguards. The notices which were sent to her husband did not mention joint returns or refunds, nor did they indicate that if the parties had filed a joint return, the wife was entitled to a return of her share. In denying the defendant's motion for summary judgment, the court held that the wife "appear[s]" to have a claim that her due process rights were violated. *Id.* at 417.[11] Other tax intercept cases indicating that due process requires notice to the nonobligor spouse prior to seizure of tax refunds are *Nelson* v. *Regan*, 560 F. Supp. 1101, 1106-1109, 1111 (D. Conn. 1983), aff'd, 731 F.2d 105 (2d Cir.), cert. denied sub nom. *Manning* v. *Nelson*, 469 U.S. 853 (1984); *Marcello* v. *Regan*, 574 F. Supp. 586, 591, 595-600 (D. R.I. 1983); *Coughlin* v. *Regan*, 584 F. Supp. 697, 707-711 (D. Me. 1984), aff'd, on other grounds, 768 F.2d 468 (1st Cir. 1985). See *McClelland* v. *Masssinga*, 786 F.2d 1205, 1210 (4th Cir. 1986). But see *Rucker* v. *Secretary of the Treasury*, 634 F. Supp. 598, 601-604 (D. Colo. 1986). In Massachusetts the nondebtor spouse who files a joint tax return is entitled to statutory notice if a

---

[10]There is no suggestion that Fay intentionally failed to fulfill his statutory duties, that he acted outside the scope of his office, or that he acted in an arbitrary manner grossly abusing the lawful powers of his office. See *O'Malley* v. *Sheriff of Worcester County*, 415 Mass. at 142-143.

[11]The initial decision in *Jahn* was issued prior to the 1984 amendments to 42 U.S.C. § 664, which provided for increased procedural protections for taxpayers whose Federal tax refunds were intercepted, including notice to the filers of joint returns.

refund is intercepted by the department. See G. L. c. 62D, § 5.

The present case involves an administrative levy, not a tax intercept, and in this area what due process requires as to notice has not been defined or clearly established. *United States* v. *National Bank of Commerce*, 472 U.S. 713, concerned an administrative levy under 26 U.S.C. § 6331 which had been held invalid against a joint depositor by the lower courts. The United States District Court, 554 F. Supp. 110, 114-115 (E.D. Ark. 1982), concluded that due process mandated more than the right to a postseizure lawsuit and held that if the government seeks to levy on a joint account, it must notify all codepositors and give them a reasonable time (even if brief) within which to claim their ownership interest in a joint account. The Eighth Circuit reached the same conclusion on statutory grounds, 726 F.2d 1292 (1984), expressing no opinion on the constitutional issues. The Supreme Court reversed, but specifically refrained from passing upon the constitutional questions addressed by the United States District Court, stating, 472 U.S. at 729 n.12:

> "We do not pass upon the constitutional questions that were addressed by the District Court, but not by the Court of Appeals, concerning the adequacy of the notice provided by § 6343(b) and § 7426 to persons with competing claims to the levied property. There is nothing in the sparse record in this case to indicate whether [the joint depositors with the obligor] were on notice as to the levy, or as to what the Government's practice is concerning the notification of codepositors in this context. As the parties are free to address this issue on remand, the dissent's concerns on this score . . . are decidedly premature."

On remand these issues were rendered moot, and the constitutional issues were never addressed. 775 F.2d 1050 (1985).

At the time of the seizure of Joyce's property, there was Federal authority holding that no explicit preseizure or postseizure notice to a joint depositor was required in the case of an administrative levy. In *Douglas* v. *United States*, 562 F. Supp. 593, 596-597 (S.D. Ga.), aff'd, 723 F.2d 919 (11th Cir.

1983), the court held that the notice of levy to the bank, and the consequent freezing of the account, provided sufficient notice of the seizure to apprise joint depositors having an interest in the funds. "Anyone having an interest in [the frozen account] would thus become aware of the levy immediately upon seeking to withdraw funds." *Id.* at 597. See *Miller* v. *United States*, 838 F. Supp. 338, 340 (N.D. Ohio 1993), a case decided shortly after the Laubingers' accounts were seized. See also *Rodriquez* v. *United States*, 629 F. Supp. 333, 347-348 (N.D. Ill. 1986).

Joyce's claim that due process entitled her to a pretaking or posttaking hearing (other than the present action) was even less supported by authority than her claim that explicit preseizure or postseizure notice was required. See *United States* v. *National Bank of Commerce*, 472 U.S. at 731 (rights of third parties may be determined after levy is made in a postseizure administrative or judicial proceeding). Also see the later cases of *Leger* v. *Commissioner of Rev.*, 421 Mass. 168, 172-174 (1995)("for assessment and collection of taxes, it is well established that postdeprivation procedures may satisfy the demands of due process"), and *Gray* v. *Commissioner of Rev.*, 422 Mass. 666, 675-676 (1996).

We conclude that Joyce's claims were not clearly established in 1993 and that an official in Fay's position would not have reasonably understood that what he was doing violated Joyce's due process rights. Accordingly, we hold Fay is entitled to qualified immunity.

Even though the contours of the rights of joint owners may not yet be well defined, we point out that serious constitutional issues are involved when a levy is imposed and joint property is seized without adequate notice. The department would be well advised to consider putting in place a policy, perhaps similar to the one suggested by the United States District Court in *United States* v. *National Bank of Commerce*, 554 F. Supp. at 114-115, requiring that written preseizure notice be given to nonobligor parties to joint accounts. Considerations of fairness suggest taking into account the obvious point noted in *Jahn* v. *Regan*, 584 F. Supp. at 417, that there is even more reason to give notice to the nonobligor joint depositor than to the obligor.

4. *Richard's claims for damages under § 1983.*[12] Richard argues that contrary to due process requirements, he was not given adequate notice and an opportunity to be heard in connection with the seizure. Richard points particularly to the defendants' failure to "inform him that even if he was paying an amount toward arrears as part of a court order, [the department] still had a legal right to seize property."

We conclude Richard's due process rights were not violated. The department's seizure of the joint accounts was preceded by a trial in which a judge in the Probate Court had made an initial determination of the amount of Richard's arrearages. The notice set forth in note 5, *supra*, informed Richard that a court had no power to reduce arrearages and that even if he was paying amounts toward his arrears through income assignment, the department was authorized to use additional methods of collection. He was also informed that his failure to pay the arrearages could result in a lien, levy, or seizure of his personal property and that he could request an administrative review of his account. After the seizure, he was provided with postseizure notice of the taking and a written explanation (in response to the plaintiffs' inquiry) of the department's actions. Moreover, by bringing this action he has had a postdeprivation right of review. For the reasons stated in *Gray* v. *Commissioner of Rev.*, 422 Mass. at 675-676, and applying the balancing factors of *Matthews* v. *Eldridge*, 424 U.S. 319, 335 (1976), set forth in the margin and cited in *Gray*,[13] we conclude Richard was not denied his due process rights.[14]

5. *The claims of the Bradbury children.* The claims made

[12]Richard's claims against the department and defendant Fay in his official capacity fail for the same reasons as did Joyce's.

[13]"In considering whether a challenged action satisfies due process requirements, courts must balance the private interest affected, the risk of erroneous deprivation, the probable value of additional or substitute safeguards, and the governmental interests involved. *Matthews* v. *Eldridge*, 424 U.S. 319, 335 (1976)." *Gray* v. *Commissioner of Rev.*, 422 Mass. at 675. As noted in *Gray*, at 675, quoting from *Duranceau* v. *Wallace*, 743 F.2d 709, 711 (9th Cir. 1984), "[i]t is hard to imagine a more compelling state interest than the support of its children."

[14]Since there was no violation of Richard's due process rights, we need not reach the question whether defendant Fay, whose actions were, with regard to Richard, more circumscribed, was entitled to qualified immunity on Richard's claims. We also need not address Richard's claim under art. 30 of the Massachusetts Declaration of Rights that the seizure ignored a

on behalf of the children were based on the fact that the monies in the joint account were to be used for their support. As there was no allegation that the Bradbury children were parties to the joint accounts, or had any ownership interest therein, the children lacked standing to bring this action. See *R.J.A.* v. *K.A.V.*, 34 Mass. App. Ct. 369, 373 n.8 (1993) (proper standing is, of course, a jurisdictional prerequisite to being allowed to press the merits of any legal claim).[15]

6. *Second amended complaint.* The plaintiffs also claim that they should have been granted leave to amend their first amended complaint, as they had requested on March 13, 1995, at the hearing before the judge. The plaintiffs represent in their reply brief that they had, on January 13, 1995, submitted to the Superior Court a motion for leave to file a second amended complaint together with a sixty-eight page second amended complaint and that these papers had not been accepted for filing because of an error made by the plaintiffs involving "a 'copied signature' instead of an 'original one'." Thus at the time of the hearing, both according to the plaintiffs' reply brief and the docket, there was no motion on which the judge could act. The docket also shows no subsequent motions. The motion and second amended complaint are not part of the record, although included in the supplemental appendix filed by the defendants, and we do not

valid Probate Court order establishing a payment schedule for the arrearages due as the argument was not raised adequately below. In any event, even if we were to reach the issue and were to assume that § 1983 can be used as a vehicle for raising the State constitutional claim, but see *Johnson* v. *Rodriquez*, 943 F.2d at 108 (under § 1983, aggrieved individual may sue for abridgment of rights created by Constitution or laws of United States), his argument is probably foreclosed by the Supreme Judicial Court's decision in *Gray* v. *Commissioner of Rev.*, 422 Mass. at 674-675, despite the absence in this case of the Child Support Enforcement, CSE Directive C-93-1, referred to in *Gray.*

[15]We need not reach the question whether Joyce, an unlicensed layman, could act as the children's lawyer in these proceedings. See G. L. c. 221, § 46A. Compare and contrast G. L. c. 221, §§ 46A & 48. A number of Federal courts have held that a nonattorney parent must be represented by counsel in bringing an action on behalf of a child. See, e.g., *Cheung* v. *Youth Orchestra Foundation of Buffalo, Inc.*, 906 F.2d 59, 61-62 (2d Cir. 1990); *Osei-Afriyie* v. *Medical College of Pa.*, 937 F.2d 876, 882-884 (3d Cir. 1991), *S.C.*, 502 U.S. 979 (1991); *Meeker* v. *Kercher*, 782 F.2d 153, 154 (10th Cir. 1986); *Brown* v. *Ortho Diagnostic Sys., Inc.*, 868 F. Supp. 168, 170-172 (E.D. Va. 1994).

consider them. See *Cambridgeport Sav. Bank* v. *Binns*, 5 Mass. App. Ct. 205, 205 (1977).[16]

The judgment below is modified to indicate that upon payment of the amounts seized with interest, the complaint is dismissed. As so modified the judgment is affirmed.

*So ordered.*

---

[16]The briefs suggest that the plaintiffs sought to include a claim under the Tort Claims Act, G. L. c. 258, and to particularize their § 1983 claims. We note in passing that it is unlikely that any claim under c. 258 would succeed because the analysis of the discretionary function under the Massachusetts Tort Claims Act precludes liability for policymaking determinations such as the levying on joint accounts without preseizure notice. See *Duarte* v. *Healy*, 405 Mass. at 49-51; *Harry Stoller & Co.* v. *Lowell*, 412 Mass. 139, 144-145 (1992).

Also, in view of our decision that Fay is entitled to qualified immunity, we doubt whether the plaintiffs' chances of withstanding summary judgment on a more particularized statement of their claims under § 1983, based on the same facts, would fare any better.